COMMONWEALTH vs. JAMES J. GALLARELLI.

Suffolk.   September 11, 1986. — January 12, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Practice, Criminal,* New trial, Suppression of evidence by prosecutor, Disclosure of evidence, Discovery, Pretrial conference. *Constitutional Law,* Production of materials on demand.

Where a police crime laboratory had conducted a scientific test to determine whether blood was present on a knife seized from a defendant charged with assault by means of a dangerous weapon, and where the prosecution knew that the presence or absence of blood on the defendant's knife was highly material, a pretrial conference report in which the prosecution agreed to disclose exculpatory evidence within its control, including "police reports" and "scientific reports," constituted a specific request by the defendant for the report of the test, which showed that no traces of blood had been found on the knife, and consequently, in support of his contention that the report had been suppressed in violation of his constitutional rights, the defendant was required to show merely a substantial basis for his contention that the laboratory report was material. [20-22]

A defendant convicted of assault and battery by means of a dangerous weapon, a knife, was entitled to a new trial where his request for disclosure of exculpatory evidence within the prosecution's control was sufficiently specific to notify the prosecution of his desire to obtain a certain police laboratory report to the effect that no traces of blood had been found on a knife seized from him at the time of his arrest, and where the defendant, in postconviction proceedings, showed a substantial basis for his claims that the report was material and that he was prejudiced by the prosecution's failure to disclose it. [22-24]

INDICTMENT found and returned in the Superior Court Department on January 17, 1983.

The case was tried before *James D. McDaniel, Jr.,* J., and a motion for a new trial was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Edward F. Haber* for the defendant.

*Laura Callahan,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. After a jury trial in October, 1984, the defendant was convicted of assault and battery by means of a dangerous weapon, a knife. He was sentenced to the Massachusetts Correctional Institution at Walpole (now Cedar Junction) for a term of eight to ten years.[1] He appeals both his conviction and the denial of his motion for postconviction relief. In the view we take of the case, we need consider only the appeal from the denial of the defendant's motion for a new trial.

The record reveals the following facts. At midnight on Friday, December 10, 1982, Stephen W. Travis and three of his friends were among a throng of 800 then patronizing a Boston nightclub. While drinking near a dance floor, Travis noticed that a fistfight had broken out among three men nearby. Moments later, Travis felt someone bump him from behind. Turning, Travis saw the defendant and pushed him away. The defendant threw a punch at Travis, and Travis responded in kind, knocking the defendant to his knees. From that position, the defendant lunged upward with his hand toward Travis's stomach. Travis saw blood staining his shirt. The defendant disappeared quickly into the crowd, as Travis left the club. Boston police Officers Richard Clancy and Charles Hubert arrived at the nightclub within five minutes of the incident. One of Travis's friends led the officers to the defendant, who was still inside. The defendant sought to elude apprehension. After a chase within the club, he was apprehended, and, after a violent struggle, Officer Clancy subdued him and placed him under arrest.[2] He was searched immediately. Officer Clancy found a knife with a four-inch blade in the defendant's trousers, at the small of his back. Officer Hubert took control of the knife.

---

[1] All but sixty days of this sentence were suspended. In 1980, however, the defendant had been placed on probation after pleading guilty to a number of other charges. On conviction of the instant offense, his probation was revoked, and he was committed to serve concurrent terms totalling twenty years at the Massachusetts Correctional Institution in Concord, with the term of sixty days to be served from and after the term of twenty years.

[2] Another man was arrested at the same time, but he escaped.

Prior to trial, the prosecution and the defense submitted a pretrial conference report as required by Mass. R. Crim. P. 11 (a) (2) (A), 378 Mass. 862 (1979). At trial, the Commonwealth relied primarily on the eyewitness testimony of the victim and his friends. Officer Clancy also testified, but Officer Hubert did not testify because he had died. Officer Clancy's testimony revealed that the Commonwealth was unable to produce the knife which was taken from the defendant at the time of his arrest.[3] The defendant moved to strike all testimony concerning the knife because the prosecution had failed to produce it in court. The defendant also moved for dismissal on the ground that failure to produce the knife constituted prosecutorial suppression of exculpatory evidence. Both motions were denied. The defense rested without calling witnesses.

After his conviction, the defendant engaged new counsel who, in preparation for this appeal, telephoned the Boston police crime laboratory and learned that a written report existed showing that a test for the presence of blood had been conducted on the knife shortly after it was seized. The report showed no trace of blood on the defendant's knife. The defendant then moved for postconviction relief under Mass. R. Crim. P. 30 (a), 378 Mass. 900 (1979). The grounds stated were, inter alia, that the laboratory report was exculpatory evidence suppressed by the prosecution in violation of the defendant's Federal and State constitutional rights. See *Brady* v. *Maryland,* 373 U.S. 83 (1963); *Commonwealth* v. *Ellison,* 376 Mass. 1 (1978). The motion also alleged that the laboratory report constituted new evidence warranting a new trial. This motion was heard and denied by the trial judge.

On appeal, we consider only the defendant's claim that a new trial is required because the laboratory report showing no trace of blood on the defendant's knife was exculpatory evi-

---

[3] Apparently, Officer Hubert had kept possession of the knife. Officer Clancy testified that he first realized that the knife was lost only a day or two before trial. The prosecutor told the judge that he had not known with certainty of the unavailability of the knife until the very day of Officer Clancy's testimony. The judge found no evidence of bad faith or deliberate suppression of the knife by the Commonwealth.

dence which the Commonwealth suppressed in violation of his constitutional rights. We are persuaded that this contention is dispositive of the case, and we order a new trial.

In the pretrial conference report filed pursuant to Mass. R. Crim. P. 11 (a) (2) (A), the Commonwealth agreed to furnish the defendant with the mandatory discovery guaranteed by Mass. R. Crim. P. 14 (a) (1) (C), 378 Mass. 874 (1979), as to "any facts of an exculpatory nature within the possession, custody, or control of the prosecutor." *Id.* The Commonwealth further agreed to provide the defendant, as additional discovery, with "police reports" and "scientific reports." Under rule 11, pretrial agreements are binding on the parties and have the force of a court order. *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 304 n.3 (1984). Cf. *Commonwealth* v. *Delaney,* 11 Mass. App. Ct. 398, 403 n.3 (1981). When a trial judge is confronted by prosecutorial noncompliance with such an order, he is authorized to impose whatever remedy he deems just. See Mass. R. Crim. P. 14 (c) (1). The Commonwealth concedes that the laboratory report constituted exculpatory evidence. See *Commonwealth* v. *Ellison, supra* at 22 n.9 (evidence is "exculpatory" if it tends to negate the guilt of the accused).[4] We consider whether the request for the laboratory report was general or specific, whether the evidence contained in the report was material, and whether the defendant was prejudiced by the suppression of the report.

Depending on the specificity of the defendant's request for exculpatory evidence, different standards of judicial review apply. "Where the accused has made a request for evidence sufficiently specific to place the prosecution on notice as to what the defense desires, the evidence must be disclosed even if it provides only 'a substantial basis for claiming materiality exists.'" *Commonwealth* v. *Wilson,* 381 Mass. 90, 108-109

---

[4] The Commonwealth does not dispute that, as matter of law, the laboratory report was within its custody and control, even though no copy was ever in the prosecutor's files, and he himself was not aware that it existed. See *Commonwealth* v. *St. Germain,* 381 Mass. 256, 261 n.8 (1980). The Commonwealth also concedes that the prosecutor was duty bound to disclose the contents of the laboratory report.

(1980), quoting *United States* v. *Agurs,* 427 U.S. 97, 106 (1976). "By way of contrast, where there has been no defense request whatsoever or only a general request for 'all *Brady*' or 'all exculpatory' evidence," *Wilson, supra* at 109, the test is whether the undisclosed evidence creates a "reasonable doubt that did not otherwise exist," *id.* at 110. See *Commonwealth* v. *Lam Hue To, supra* at 308; *Commonwealth* v. *Collins,* 386 Mass. 1, 9-10 (1982). The judge, in his written findings, concluded that the defendant's request was merely general; he also concluded that the evidence of the laboratory report was not, under the latter standard, material and prejudicial. We conclude that he erred as matter of law.[5]

The defendant asserts that his request was specific, because the pretrial agreement asked specifically for "police reports" and "scientific reports." The judge held, however, relying on *Commonwealth* v. *Jackson,* 388 Mass. 98 (1983), that these words were not specific enough to put the Commonwealth on notice that the laboratory report as to the test of the knife was requested. In *Jackson, supra,* the defendant admitted that his request for exculpatory material was general in nature, but argued that, taken with other requests, it should be considered specific. We disagreed. We held that a request for "state, county or police department reports" was not a request specific enough to put the prosecutor on notice with respect to reports of police investigations of another, apparently unrelated, crime.

---

[5] The Commonwealth urges us to follow the approach recently adopted for use in the Federal courts. See *United States* v. *Bagley,* 473 U.S. 667 (1985). In *Bagley,* the United States Supreme Court devised a test for materiality which it regards as "sufficiently flexible to cover the 'no request,' 'general request,' and 'specific request' cases of prosecutorial failure to disclose evidence favorable to the accused." *Id.* at 682. By the *Bagley* test, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* As matter of State law, we decline to adopt this test. We decide instead to adhere to what, in our view, are the more prudent safeguards of defendants' rights now found in the numerous decisions which have developed our traditional approach to these issues. See *Commonwealth* v. *Ellison, supra* at 23-25, and cases cited.

*Id.* at 110. The *Jackson* case is not dispositive, because the evidence not disclosed in this case was developed for the sole purpose of investigating the crime at bar. As we made clear in *Jackson,* a request to be considered "specific" must " 'provide the Commonwealth with notice of the defendant['s] interest in a particular piece of evidence.' *Commonwealth* v. *Wilson,* 381 Mass. 90, 109 (1980)." *Id.* In light of the charge against the defendant, the scientific investigation conducted, and the fact that the prosecution knew that the presence or absence of blood on the defendant's knife was highly material, the laboratory report concerning the weapon was within the plain meaning of the words used in the request for police and scientific reports. Thus, we hold that the defendant made a specific request for the laboratory report and, therefore, that the defendant need only show a substantial basis for his claim that it was material.

Applying this test, we note that, while there was ample evidence of a fight in which the defendant struck the victim, the evidence offered to prove that it was the defendant who stabbed the victim was weaker. The Commonwealth called four eyewitnesses — the victim and three of his friends. Two of the friends testified that, while they saw the defendant lunge at the victim, they did not see the defendant stab him. They did not see a knife in the defendant's hand at any time. The third friend was not asked whether he saw a knife. The victim himself testified equivocally; on direct examination, he said that he "saw a glimpse of a knife" as the defendant withdrew his hand, but he also testified, on cross-examination, that he saw no knife in the lunging hand, and that everything happened so quickly he "really didn't know what happened." In this context, where it was the prosecution's theory that the defendant used the knife found on him to stab the victim, we think the defendant has more than a substantial basis for claiming that a laboratory report showing no traces of blood on his knife was material and prejudicial.[6]

---

[6] We also note that, while we are not bound by the approach now controlling in the Federal courts, see note 5, *supra,* we view the laboratory report as so material that its suppression is sufficient to undermine our confidence

It is undisputed that the Commonwealth never disclosed the laboratory report, and that the very existence of the report was not discovered until nearly five months after the defendant's conviction. " 'When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.' *Agurs, supra* at 106. In such cases, *Agurs* commands that 'the reviewing judge must set aside the verdict and judgment unless his "conviction is sure that the error did not influence the jury, or had but very slight effect." ' *Id.* at 112." *Commonwealth* v. *Ellison,* 376 Mass. 1, 24-25 (1978). We cannot be confident that the laboratory report would have failed to influence the jury.

The Commonwealth, however, urges us to agree with the trial judge, who found a lack of prejudice because, in his view, the laboratory report was suppressed, not solely due to prosecutorial negligence, but also because of a "reasonable trial tactic" employed by the defense. We have reviewed the transcript of the trial and the motion hearing, and we find that this analysis is at odds not only with logic and the facts but also with the judge's own statements at trial and the motion hearing. Such a finding clearly is not warranted by the evidence.[7] To

---

in the outcome of the defendant's trial. Therefore, even if we were to adopt the approach set forth in *Bagley, supra,* we would conclude that the defendant is entitled to relief.

[7] The judge found that defense counsel admitted being informed by Officer Hubert's testimony at the probable cause hearing that, while no laboratory report had yet been received, the results of a test for blood on the knife had come back negative. At trial, however, the judge and both counsel proceeded on the assumption that no laboratory report existed. Nevertheless, the Commonwealth argues that the failure of the prosecutor to deliver the laboratory report to the defendant cannot be characterized as "suppression" of it. We find no merit in this argument. Where defense counsel has received the prosecutor's express promise to provide "police reports" or "scientific reports," that promise coupled with the prosecutor's failure to furnish counsel with any laboratory evidence warrants a reasonable conclusion by counsel that, no matter what he was told previously by Officer Hubert (now unavailable), no report existed. The Commonwealth's reliance on *Lugo* v. *Munoz,* 682 F.2d 7 (1st Cir. 1982), is misplaced. Even if we were to agree that prosecutors are duty bound only to disclose "exculpatory evidence *known to the government but unknown to* [*the defendant*]" (emphasis in original), *id.* at 10, we would hold that where a prosecutor fails to disclose

agree with the judge, we must suppose that a trial lawyer (who was described by the judge as "an attorney with extensive experience") would prefer to argue to a jury that reasonable doubt can be inferred from the absence of a test report when he could have relied instead on a police report showing the absence of blood on his client's knife.

"The grant of a mistrial followed by a new trial is the relief typically granted where a defendant is prejudiced by a prosecutor's failure to disclose properly exculpatory, material evidence. See *Brady* v. *Maryland,* 373 U.S. 83, 87 (1963); *Commonwealth* v. *Ellison, supra* at 3." *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 310 (1984). A new trial is the appropriate remedy in the circumstances presented by this case.[8]

*Order denying motion for*
*new trial reversed.*

evidence in his control which is also within the scope of a pretrial agreement having the force of a court order, such failure amounts to a representation on which the defendant is entitled to rely, that no such evidence exists. Additionally, we do not agree with the judge's conclusion that defense counsel viewed the laboratory report as too unimportant to warrant the taking of "appropriate steps to secure it." The defendant's trial counsel did not testify at the motion hearing, and there is no evidence at trial, or at the hearing, to support this finding. Officer Clancy testified in open court that, to his knowledge, no laboratory report existed.

Nor can we agree that, when "[f]aced with the unexpected revelation at trial that the knife was lost, [defense counsel] apparently decided that such circumstance coupled with his knowledge that the test results were negative . . . might afford him a strong argument to the jury on the issue of reasonable doubt in the face of a very strong case against the defendant." Where counsel's supposed "knowledge that the test results were negative" was not in evidence, such knowledge could not have afforded him any argument to lay before the jury to create a reasonable doubt of guilt.

[8] The defendant argues that the judge erred when denying his motion to dismiss. The defendant sought dismissal on grounds that (1) the Commonwealth failed to produce exculpatory evidence, the knife; and (2) the prosecutor gave timely notice neither of the loss of the knife nor of tests that were done. Apparently, the defendant argues that he is entitled to dismissal because these prosecutorial failures amount to irremediable harm. We have held that such failures result in such harm only where they "prevent[ ] the possibility of a fair trial" in the second instance. *Lam Hue To, supra* at 314. The defendant has not stated reasons why a second trial could not be conducted fairly, nor do we perceive any. Dismissal of the indictment is not warranted, but a new trial clearly is.