COMMONWEALTH *vs.* JOSEPH VIEIRA.
(and a companion case [1]).

Bristol. November 3, 1987. — March 10, 1988.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Rape. Practice, Criminal,* Disclosure of evidence, Suppression of evidence by prosecutor, Discovery, Severance. *Due Process of Law,* Disclosure of evidence. *Evidence,* Impeachment of credibility, State of mind. *Witness,* Credibility.

Defendants charged with rape were not denied any Federal or State due process rights by the prosecution's failure to make timely disclosure of certain of the victim's pretrial statements which were inconsistent with reports previously furnished to defense counsel where, in light of the victim's denial of her ability to remember the earlier statements, as well as the defendants' thorough cross-examination of the victim on all relevant matters, it did not appear that additional time would have enhanced the defendants' preparedness for cross-examination and where, since the undisclosed statements presented a version of the events previously made known to the defendants through other prospective witnesses, there was no prejudice to them in the preparation of their defense strategies. [831-835]

Defendants being tried jointly on charges of rape were not prejudiced by the prosecutor's failure to make timely disclosure of the victim's ability to identify them, where identification was not a material issue as to either defendant and where, moreover, defense counsel at trial elicited testimony that the victim had not identified either of them immediately after the incident or later when viewing a photographic array. [835-836]

Failure of the prosecution at the joint trial of two defendants charged with rape to make timely disclosure of certain pretrial statements of the victim did not deprive one of the defendants of any basis on which he successfully might have maintained that severance of his trial was required. [836-837]

Failure of the prosecution at a rape trial to make timely disclosure of a pretrial statement by a ward clerk at the hospital to which the victim had been taken did not result in prejudice to the defendant, where the substance of the statement, even if it could be considered exculpatory, was

---

[1] Commonwealth *vs.* Daniel Silvia.

known to the defendants through other materials, was merely cumulative, and created no reasonable doubt that did not otherwise exist. [837-838]

The judge at a rape trial did not err in excluding as evidence a hospital record of an earlier incident in which a woman having the same name as the victim had complained of rape, where the hospital record provided no evidence that the allegation of rape was indeed false, and where its admission thus would have served no purpose but to impeach the victim on a collateral issue, viz., her denial of the earlier incident. [838-839]

The judge at a rape trial properly excluded, as having no relevance to matters at issue, evidence of a statement by the victim, shortly before the incident, that she was under the care of a psychiatrist. [840-841]

At a rape trial the judge, in his discretion, properly excluded as evidence so much of a conversation between the victim and one of the defendants as allegedly pertained to the victim's willingness to engage in sexual conduct with him in exchange for money, where the judge could properly conclude that the conversation was too remote in time and substance to give rise to a reasonable inference of consent, some months later, to public sexual intercourse with a group of men. [841-842]

INDICTMENTS found and returned in the Superior Court Department on March 16, 1983.

The cases were tried before *William G. Young,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David H. Waxler* for Joseph Vieira.

*Edward Harrington, Jr. (Steven J. Rappaport* with him) for Daniel Silvia.

*Patricia O. Ellis,* Assistant District Attorney (*Phillip L. Weiner,* Assistant District Attorney, with her) for the Commonwealth.

LYNCH, J. After a jury trial in the Superior Court, the defendants were convicted of aggravated rape. G. L. c. 265, § 22 (*a*) (1986 ed.). Silvia was sentenced to from nine to twelve years at the Massachusetts Correctional Institution at Cedar Junction; Vieira to from six to eight years. They appeal from their convictions and from the denial of their motions for a new trial. We transferred the cases here on our own motion and we affirm.

The facts the jury could have found are as follows. On the evening of March 6, 1983, a young woman (victim) entered Big Dan's Tavern in New Bedford to purchase cigarettes. While

there, she ordered a drink and engaged in a brief conversation with another woman patron. The two women also conversed with and observed the pool game of codefendants John Cordeiro and Victor Raposo.[2] There were approximately fifteen men in the tavern.

Sometime after the other woman left Big Dan's, the victim also prepared to leave. Cordeiro and Raposo offered to give her a ride home, which she declined. While the victim was standing in the area of the bar, Silvia and Vieira approached her from behind, knocked her to the floor, and removed her pants as Cordeiro and Raposo tried to force the victim to perform fellatio.

Silvia and Vieira then dragged the victim, kicking and screaming, and swung her onto the pool table. There, Silvia penetrated her vaginally while she was restrained at various points by Cordeiro, Raposo, and Vieira. After Silvia got off the victim, he held her by the hair as Vieira got on top of her. While the victim was restrained on the pool table, Cordeiro again attempted to force her to perform fellatio. Eventually, clothed only in a shirt and one shoe, the victim escaped and ran into the street where she flagged down a passing truck.

On appeal, the defendants Vieira and Silvia raise the following arguments. First, they claim that the prosecution's failure timely to disclose exculpatory evidence, in the form of inconsistent and more incriminating statements by the victim, deprived them of State and Federal due process rights; similarly, they contend that the prosecutor's suppression until after trial of a witness's recorded account of the victim's condition and statements shortly after the alleged rape deprived them of due process. The remaining contentions addressed here[3] concern evidentiary rulings which the defendants assert prejudiced their ability to present a consent defense. First, the defendants argue

---

[2] See *Commonwealth* v. *Cordeiro, post* 843 (1988).

[3] The defendants join codefendants Cordeiro and Raposo in challenging their convictions on the ground that the judge's order barring electronic media coverage of the victim, while permitting such coverage of the testimony of the defendants, denied the defendants their due process right to a fair trial. See *Commonwealth* v. *Cordeiro, post* at 845.

that, under *Commonwealth* v. *Bohannon*, 376 Mass. 90 (1978), *S.C.*, 385 Mass. 733 (1982), they were denied a full and fair opportunity to present a defense, because the judge excluded a hospital record of an allegedly false prior complaint of rape. Second, they contend that the woman patron, called as a defense witness, should have been permitted to testify to a statement which is asserted to be relevant to the victim's state of mind and purpose to engage in "unusual consensual sexual activity." Finally, the defendants argue that the judge erred in excluding evidence of a prior conversation between Silvia and the victim concerning prostitution. We discuss the contentions seriatim.

1. *The prosecutor's failure to disclose exculpatory evidence.*

a. The defendants[4] argue that their due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights were violated by the prosecution's failure to provide timely disclosure of certain inconsistent pretrial statements made by the victim, and that the resulting prejudice entitles them to a new trial. On February 7, 1984, more than two weeks prior to commencement of trial, the victim told the prosecutors for the first time a version of the events at Big Dan's in which she was able to specify the precise number of men who attacked her and described their specific roles. This version was the first in which she (1) connected Silvia with forcibly assisting her other assailants after he had sexual intercourse with the victim on the pool table, and (2) connected Vieira with acts of sexual intercourse, dragging her to the pool table, and forcibly restraining her while Silvia had sexual inter-

---

[4] In their brief, defendants Cordeiro and Raposo purport to incorporate by reference, pursuant to Mass. R. A. P. 16 (j), 365 Mass. 860 (1974), the arguments of Vieira and Silvia relating to delayed disclosure and suppression of exculpatory evidence. Where, as here, arguments pertaining to prejudice are meaningless unless related to the circumstances of a particular case, we do not consider a bare reference to Mass. R. A. P. 16 (j) to rise to the level of appellate argument within the meaning of Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). Moreover, since Cordeiro and Raposo did not raise this issue at trial, the judge limited his consideration of the issue in his ruling on the defendants' motions for a new trial to Vieira and Silvia.

course. Neither Vieira nor Silvia had been identified in the information supplied prior to trial as being involved in restraining the victim. However, the defendants had knowledge of prior statements of the bartender, in which he stated that Vieira, as well as Silvia, dragged the victim to the pool table and then followed Silvia in having sexual intercourse with her.

There is no dispute that the details provided by the victim just prior to trial were inconsistent with reports initially provided to defense counsel and that the information should have been furnished to the defendants under *Brady* v. *Maryland,* 373 U.S. 83 (1963), and *United States* v. *Agurs,* 427 U.S. 97 (1976).[5] The defendants, however, first learned of these details through the victim's direct testimony, whereupon they moved for a mistrial or, in the alternative, a continuance. The motions for mistrial were denied, but the defendants ultimately were granted a weekend-long continuance.

A defendant is deprived of due process if he was prejudiced by the prosecution's failure timely to disclose requested exculpatory and material evidence. There is no real dispute that the statement was exculpatory, and, therefore, subject to disclosure under *Brady* and its progeny. Although the evidence was more incriminating than the earlier statements, it was exculpatory in the sense that the variance with the previous statements permitted "challenge[ ] [to] the credibility of a key prosecution witness." *Commonwealth* v. *Ellison,* 376 Mass. 1, 22 (1978).

The more difficult issues here concern the closely related questions of materiality and prejudice. "Undisclosed exculpatory evidence is 'material' if, 'evaluated in the context of the entire record,' it 'creates a reasonable doubt that did not otherwise exist.'" *Commonwealth* v. *Gregory, ante* 437, 442 (1988), quoting *United States* v. *Agurs, supra* at 112. See *Commonwealth* v. *Gallarelli,* 399 Mass. 17 (1987). For pur-

---

[5]The content of the undisclosed statements was in fact more inculpatory, giving rise also to a duty to disclose under *Commonwealth* v. *Gilbert,* 377 Mass. 887 (1979). However, "[t]he distinction between inculpatory and exculpatory evidence is not significant where the issue is delayed disclosure, as opposed to failure to disclose." *Commonwealth* v. *Baldwin,* 385 Mass. 165, 175 n.10 (1982).

poses of judicial review, where, as here, there was a specific request, in order to be deemed material the evidence need only provide "a substantial basis for claiming materiality exists." *Commonwealth* v. *Wilson,* 381 Mass. 90, 109 (1980), quoting *Agurs, supra* at 106. As elaborated more fully in *Commonwealth* v. *Ellison, supra* at 23-26, the question of materiality involves an examination of various factors which have bearing on "the consequences of the delay . . . [W]e ask whether the prosecution's disclosure was sufficiently timely to allow the defendant 'to make effective use of the evidence in preparing and presenting his case.'" *Commonwealth* v. *Wilson, supra* at 114, quoting *Commonwealth* v. *Adrey,* 376 Mass. 747, 755 (1978).[6] Here, the asserted materiality and prejudice revolve around issues of effective impeachment of witnesses, trial strategy, and preparation. The defendants argue that they were prejudiced (1) by being denied adequate time to investigate possible causes of the variances in the victim's statements and to prepare for cross-examination, and (2) by the fact that the theories of their respective defenses were undermined by testimony significantly different from that anticipated on the basis of earlier statements. Additionally, Vieira argues that his decision not to object to being joined for trial with Silvia was premised upon a careful appraisal of the evidence obtained prior to trial. His agreement to joinder is asserted to have been determined by the congruence of Vieira's defense strategy with Silvia's defense of consent and intention to testify in his own behalf. He contends that, had he properly been apprised of the February 7, 1984, statement, he would not have agreed to such joinder. We agree with the ruling of the judge that there was

---

[6]The defendants urge us to analyze materiality under what they characterize as the more exacting of the standards in *Agurs, supra,* applicable to cases involving a specific request under *Brady, supra.* That standard, as quoted and adopted in some Massachusetts cases, requires that " 'the reviewing judge . . . set aside the verdict and judgment unless his "conviction is sure that the error did not influence the jury, or had but very slight effect." ' " *Commonwealth* v. *Gallarelli, supra* at 23, quoting *United States* v. *Agurs, supra* at 112. While there is arguably a distinction between the two formulations of the applicable standard, we conclude that under either standard there was no prejudice.

no prejudice. See *Commonwealth* v. *Baldwin,* 385 Mass. 165, 176-177 (1982).

First, whether or not additional time might have enhanced the defendants' preparedness for cross-examination of the victim, the defendants' cross-examination of this key witness "was not only extended but searching, and we do not think it would have been materially improved by earlier warning about the witness's departure from the written statement." *Commonwealth* v. *Gilbert,* 377 Mass. 887, 895 (1979). Counsel for the defendants vigorously attempted to impeach the victim's trial testimony with her prior statements to the police and others. Where the victim repeatedly denied ability to remember her earlier statements, such an impediment to direct impeachment would not be remedied by additional preparation time. There was also thorough cross-examination on the influence of exposure to media accounts, and of conversations with the police, the office of the district attorney, and the attorney handling her civil suit arising out of the incident. Since there was thorough cross-examination on these matters, no prejudice resulted from the judge's denial of voir dire, an alternative form of relief requested in the defendants' motion for dismissal with prejudice.

Next, we consider the defendants' contentions of prejudice related to preparation of their respective defenses. Silvia argues that he had anticipated relying on a defense of consent and arguing nonparticipation in any joint venture. Numerous pretrial statements available to Silvia provided evidence of his acts of force and her resistance, thus contradicting his consent defense. While it is true that it was in the course of the victim's trial testimony that Silvia first learned that she claimed he restrained her *after* having sexual intercourse, he was aware that the bartender had told the police that Silvia had been undressing the victim while Cordeiro forced her to perform fellatio. Silva was therefore apprised before trial of acts which contradicted both prongs of his defense theory. In these circumstances, the prosecution's failure to disclose a statement which provided some additional evidence of a continuing joint venture does not warrant the grant of a new trial.

Similarly, Vieira argues that the victim's testimony undercut his central theory of defense, viz., that he was a mere bystander who neither had sexual intercourse with the victim nor aided other alleged joint venturers other than Silvia who, it was contended, had consensual sexual relations with the victim. Vieira concedes that the bartender's pretrial statements, contrary to his trial testimony, alleged that Vieira had sexual intercourse with the victim. Moreover, Vieira was aware of the bartender's statements to the effect that Vieira participated in removing the victim's pants and dragging her to the pool table. Thus, he argues it was important to his defense that the bartender's version of the events remain uncorroborated and that the victim remain unable to describe Vieira's specific roles in the incident. His ability to impeach prosecution witnesses, therefore, was a task made more difficult by the victim's trial testimony. But her testimony did not present a version of the facts so different in substance that he was prejudiced by relying on what "amounts to a representation . . . that no such evidence exists." *Commonwealth* v. *Gallarelli, supra* at 23, 24 n.7. The evidence at trial portrayed a version of the events previously disclosed, albeit through different witnesses. There was, therefore, no prejudice with regard to preparation of a defense theory.

Also related to the issue of the defendants' ability to impeach the victim, the defendants argue that the prosecutor's failure to disclose the victim's ability to make critical identifications where she had not done so before implicated another key feature of their anticipated defense strategy.[7] Until trial, for reasons not relevant here, the defendants held the understandable, but mistaken, belief that the victim had previously failed to identify Silvia or Vieira from an array of photographs. The defendants contend that their inability to demonstrate to the jury that the

---

[7]The defendants apparently have abandoned the argument previously advanced in their motion to dismiss that, where the prosecution knew or should have known that defense counsel had "the clear, firm belief" that the victim had failed to identify the defendants, it was under an obligation, pursuant to *Commonwealth* v. *Gilbert, supra,* to correct any misunderstanding.

victim had failed to identify the defendants constitutes prejudice attributable to misrepresentation on the part of the Commonwealth which, coupled with failure to preserve the photographic array and certain questioning at trial by the prosecutor, created the misimpression that there had been no failure by the victim to identify the defendants.

As to Silvia, there simply is no prejudice inasmuch as his defense was one of consent and identification was not a material issue. Nor do we perceive any prejudice to Vieira, whose precise role and actions in the incident were a major issue. Notwithstanding the unfortunate surprise and confusion caused by misapprehension concerning various photographic arrays, defense counsel successfully elicited testimony that the victim not only had viewed an array of photographs and selected only those of Cordeiro and Raposo, but also that she had not identified Vieira and Silvia at Big Dan's immediately after the incident. In sum, irrespective of whatever role the office of the district attorney may have had in creating or not disspelling the defendants' misapprehension, we see nothing in the record which indicates that "a more credible defense would have been available" had this misapprehension been clarified earlier. See *Commonwealth* v. *Bryant,* 390 Mass. 729, 749 n.29 (1984).

Last, we briefly address Vieira's contention that his decision not to object to being joined for trial with Silvia was made in reliance upon the state of the evidence as it was known through pretrial discovery and that he was therefore prejudiced by lack of timely disclosure. The short answer is that matters of joinder and severance are within the sound discretion of the trial judge and that a new trial is granted only where there has been an abuse of that discretion. *Commonwealth* v. *Moran,* 387 Mass. 644 (1982). In *Moran, supra* at 658, we held that failure to sever, upon the making of a timely motion, constitutes an abuse of discretion "when the prejudice resulting from a joint trial is so compelling that it prevents a defendant from obtaining a fair trial." We further noted that such compelling prejudice is not found where codefendants are "merely pursuing inconsistent trial strategies" or where "a defendant would have had a better chance of acquittal had he been tried alone." *Id.* at

658, 659. Here, even had full disclosure been made in a timely
fashion, we can see no basis upon which Vieira successfully
could have maintained that severance was required. We there-
fore conclude that none of the defendants' asserted grounds
for new trials related to delayed disclosure of inconsistent state-
ments warrants reversal of the convictions.

b. The defendants[8] contend that they are entitled to new
trials on the additional ground that the prosecution suppressed
exculpatory evidence which had bearing on the credibility of
the victim and contradicted the testimony of a nurse at
Parkwood Hospital. The statement alleged to have been sup-
pressed was made by a hospital ward clerk to an assistant
district attorney and a State trooper. The statement was made
during an interview conducted while the trial was in progress;
the defendants did not learn of the contents of this statement
until after trial. According to the defendants, the ward clerk
stated that on the night of the incident (1) the victim claimed
that she had been raped on top of the bar, rather than on the
pool table, (2) the victim stated that she had gone out to pur-
chase milk but never mentioned cigarettes, and (3) it was her
distinct impression that the victim was "high." The defendants
contend that the ward clerk's testimony would have been val-
uable evidence serving to impeach the victim's testimony by
virtue of both the discrepancy in details and providing evidence
that the victim was so "high," or intoxicated, that she had no
independent perception of what happened to her at Big Dan's
and subsequently modified her testimony to conform with that
of other Commonwealth witnesses.

First, we note that, during the course of hearings on the
defendants' motions for a new trial, an evidentiary hearing
was conducted with respect to the alleged suppression of the
ward clerk's statement. The judge expressly found, inter alia,
that, contrary to the defendants' assertion, the ward clerk did

---

[8] Cordeiro and Raposo also incorporate by reference this argument. Unlike
the arguments discussed at note 4, *supra,* this argument relates generally
to all defendants and is, therefore, appropriately incorporated by reference
pursuant to Mass. R. A. P. 16 (j).

*not* characterize the victim as "high" on the night in question. Rather, it was found that she emphasized that the victim was distraught and hysterical. Since there is no suggestion that this finding was clearly erroneous, we deal only with the allegedly unconstitutional suppression of the remainder of the ward clerk's statement. Even assuming that such inconsistencies in detail render the statements exculpatory within the meaning of *Brady* and its progeny, we conclude that there is no prejudice warranting a new trial where the substance of the ward clerk's statement was known to the defendants through other materials, was "merely cumulative," *Commonwealth* v. *Medina,* 380 Mass. 565, 576 (1980), and created no reasonable doubt which did not otherwise exist.[9]

2. *Evidentiary Rulings.*

The defendants challenge various evidentiary rulings made during the course of trial which, it is argued, deprived them of a full and fair opportunity to present their defense, in contravention of the Massachusetts Declaration of Rights and the United States Constitution, or in the alternative, were otherwise in error because the excluded evidence should have been admitted for impeachment purposes.

a. *Prior complaint of rape.* At trial, the defendants sought to introduce a medical record, dated July 21, 1981, from Parkwood Hospital indicating that a woman having the same name as the victim had complained of rape. Examination of that record indicates that the complaining patient requested that hospital personnel telephone the police but that she was not examined "because she signed out, after an emotional confrontation [with] the [New Bedford Police Department], in which she was recalcitrant and uncooperative." The judge ruled that the record itself could not be admitted as extrinsic evidence of a prior bad act (false allegation of rape), but permitted cross-examination regarding the recorded July 21, 1981, hospi-

---

[9]Here, it should be noted that, unlike the statements discussed in part 1a, *supra,* the ward clerk's statement was not the subject of specific request and is therefore to be considered material only " 'if the omitted evidence creates a reasonable doubt that did not otherwise exist.' " *Commonwealth* v. *Gilday,* 382 Mass. 166, 178 n.5 (1980), quoting *Agurs, supra* at 112.

tal admission. On cross-examination the victim testified to certain self-identifying facts which corresponded with hospital admissions data, but denied or said that she could not recall going to Parkwood Hospital on July 21, 1981, claiming she was raped, or signing the hospital report.

Relying on *Commonwealth* v. *Bohannon,* 376 Mass. 90 (1978), the defendants argue that, where the defendants interposed consent defenses and the victim's credibility on the issue of consent was a central issue, the judge's ruling deprived them of a full and fair opportunity to present their defense. In *Bohannon,* we recognized an exception to the general rule that prior bad acts may not be used to impeach a witness's credibility and held that, in the circumstances of that case, the denial of the defendants' request to cross-examine the victim on the central issue of consent, by asking about prior false allegations of rape and thereby testing her credibility on this issue, deprived the defendants of a full and fair opportunity to present their defense to the jury. In the instant case, the defendants argue that, where, under cross-examination, the victim denied the 1981 incident or any recollection of it, the reasoning of *Bohannon* requires admission of the document itself.

We would agree, but for the critical fact that, as was found by the judge, the hospital record itself provides no evidence that the allegation of rape was indeed false. As we stressed in *Bohannon, supra* at 95, our decision there was premised in part upon the defendant's offer of proof which "indicated that he had a factual basis from independent third party records for concluding that prior allegations of rape had, in fact, been made *and were, in fact, untrue"* (emphasis added). The entries in the hospital record do not create an inference of falsity. Nonetheless, the judge permitted cross-examination on that issue. The judge having done so, however, the admission of the document itself to impeach the victim's denial of the 1981 hospital admission would have served no purpose other than to impeach her on a collateral issue.[10] There was no error.

---

[10] The defendants do not argue that the victim's statement, "I was raped," recorded in an authenticated hospital record, was admissible for impeach-

b. *Exclusion of the victim's alleged prior statement that she was under the care of a psychiatrist.* At trial, the defendants sought to elicit the testimony of the woman patron with whom the victim initially had a brief conversation, to the effect that the victim had stated to the patron, "I've never been here before, but I'm under the care of a psychiatrist." The defendants argued at trial, as they do on appeal, that this statement was admissible to show both the victim's state of mind and her purpose to engage in sex because it would serve as an explanation or excuse for the unusual, public, consensual sexual activity upon which she was about to embark with Silvia. Where the victim later denied making the statement, the defendants additionally argue that the statement should have been admitted for impeachment purposes. The victim was also said to have told the patron that she had not had sexual relations for nine months. The judge excluded that portion of the statement referring to the victim's being under psychiatric care but permitted the patron to testify to the remainder of the conversation. The ruling was clearly within the scope of the judge's discretion.

Citing *Commonwealth* v. *Lowe,* 391 Mass. 97, 105 (1984), and *Commonwealth* v. *Weichell,* 390 Mass. 62, 73-74 (1983), the defendants appear to argue that the victim's statement was admissible either as nonhearsay or under the state-of-mind exception to the hearsay rule to show motive, design, or intent relevant to the issue of consent. This argument is without merit. First, a statement to the effect that one is under the care of a psychiatrist, whether or not admitted for its full probative value, has no "tendency to show what that mental condition was." *Commonwealth* v. *Trefethen,* 157 Mass. 180, 190 (1892). Most importantly, there was no error in the judge's ruling that the proffered statement lacked relevance to matters at issue in the trial. While the probative value to be attached to evidence of motive or intent is a matter for the jury and a statement which "merely suggests" rather than "clearly shows" a declarant's

ment purposes as a statement inconsistent with her denial of recollection. Compare *Langan* v. *Pianowski,* 307 Mass. 149 (1940), with *Corsick* v. *Boston Elevated Ry.,* 218 Mass. 144 (1914).

state of mind may be admissible, *Commonwealth* v. *Lowe, supra* at 106, the asserted relationship between this statement and a probative link with the victim's consent does not even remotely approach what is "reasonable and possible." *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980).

The defendants additionally assert by way of a footnote that the statement was admissible for impeachment purposes. It does not appear from the record that this argument was raised in the defendants' motion for a new trial, nor does this assertion here rise to the level of an appellate argument. Mass. R. A. P. 16 (a) (4). We, therefore, do not consider the issue.

c. *Exclusion of testimony concerning prior conversation between Silvia and the victim.* Prior to trial, Silvia moved, pursuant to the rape-shield statute, G. L. c. 233, § 21B (1986 ed.), to be permitted to introduce evidence of a conversation between Silvia and the victim allegedly occurring two to three months prior to the incident in which the victim expressed an interest in engaging in sex in exchange for money with Silvia and others. The judge excluded that part of the conversation which pertained to matters of prostitution but permitted Silvia to testify about any past relationship and his state of mind. Additionally, the judge ruled that the defendants could cross-examine the victim with regard to her prior association with Silvia. Vieira joined Silvia's objection to these rulings. The defendants apparently elected not to cross-examine the victim on the issue.

The defendants contend that the portion of the conversation pertaining to prostitution was improperly excluded because (1) it had bearing on the issue of consent and was not barred under G. L. c. 233, § 21B, and (2) it was relevant to Silvia's state of mind and his defense that he honestly and reasonably believed the victim to be consenting to sexual intercourse.[11] They did not seek to introduce the testimony for purposes of demon-

---

[11] The defendants contend that, by barring the proffered evidence, "the Court obviated mistake of fact as a defense." They do not, however, incorporate or independently advance the argument of Cordeiro and Raposo that they were entitled to a charge on mistake of fact under a subjective standard. See *Commonwealth* v. *Cordeiro, post* at 849-851.

strating bias. See *Commonwealth* v. *Joyce,* 382 Mass. 222, 229 (1981).

The defendants do not contend that the evidence of the conversation was admissible under G. L. c. 233, § 21B, as evidence of prior sexual conduct. Therefore, the judge was well within his discretion in ruling that the conversation was too remote in time and substance to give rise to a logical or reasonable inference of consent to the incident at Big Dan's. The judge correctly permitted only a portion of the prior conversation to show a prior relationship bearing on the issue of consent. See *Commonwealth* v. *Mosby,* 11 Mass. App. Ct. 1, 13-15 (1980). We also conclude that, even assuming that an "honest and reasonable, although mistaken, belief that the victim consented," constitutes a defense to a charge of rape, *Commonwealth* v. *Grant,* 391 Mass. 645, 651 (1984), the excluded portion of the conversation does not tend to prove reasonableness of belief that the victim consented some months later to public sexual intercourse with a group of men. There was, therefore, no error.

*Judgments affirmed.*