Commonwealth *v.* Brown.

## Commonwealth *vs.* Alfred Brown.

No. 01-P-1380.

Suffolk. February 4, 2003. - April 25, 2003.

Present: Armstrong, C.J., Lenk, & Trainor, JJ.

*Larceny. Evidence,* Exculpatory, Relevancy and materiality, Police report. *Constitutional Law,* Production of materials on demand, Assistance of counsel. *Practice, Criminal,* Disclosure of evidence, Suppression of evidence by prosecutor, Assistance of counsel. *Due Process of Law,* Disclosure of evidence.

At the trial of charges arising from an automobile being vandalized, evidence of a Registry of Motor Vehicles application form showing that, at the time of the incident, the automobile was owned by someone other than the defendant, was sufficient to permit a reasonable inference that the vehicle and the property inside it belonged to that other person. [854]

At a criminal trial, the Commonwealth did not withhold exculpatory and material evidence in violation of the defendant's Federal and State constitutional rights by failing to provide a police inventory report, where the defendant's request for "police reports" was not specific enough to place the prosecutor on notice that the inventory report was being sought, and where the defendant failed to show a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial. [854-859]

At a criminal trial, the defendant's attorney did not provide ineffective assistance in remedying a defect in the Commonwealth's case, where any arguable misstep by counsel was without consequence; in not specifically requesting a police inventory report, where there was no indication in the record that, prior to trial, counsel knew that the information sought would be relevant to the defense; or in not procuring and using the transcript of a suppression hearing to impeach police officers at trial, where, despite counsel's undeniable shortcoming in this regard, it was not shown how procurement and use of the transcript at trial would have provided something material for the defense. [859-860]

Complaint received and sworn to in the Roxbury Division of the District Court Department on October 18, 1999.

A pretrial motion to suppress evidence was heard by *Rosalind H. Miller,* J.; the case was tried before *Paul K. Leary,* J., and a motion for a new trial was heard by him.

*Theodore F. Riordan* for the defendant.

*Seema Malik Brodie,* Assistant District Attorney, for the Commonwealth.

LENK, J. After trial by jury, the defendant, Alfred Brown, was acquitted of possessing burglarious tools and convicted of larceny under $250, malicious destruction of property under $250, and breaking and entering in the nighttime with the intent to commit a misdemeanor. The trial judge thereafter denied Brown's motion for new trial, sought on the grounds that the Commonwealth had failed to produce exculpatory evidence and that his trial counsel had provided ineffective assistance. Brown appeals his convictions and the denial of his motion for new trial. We affirm.

The Commonwealth introduced evidence that, on October 16, 1999, at about 9:00 P.M., Boston police Officers Rogers and Ross were on routine patrol, driving down Warren Street in the Roxbury section of Boston. Officer Rogers saw Brown playing with the locks of a parked car, and Officer Ross saw him reaching inside of the car. After passing the car, they turned back to investigate. As they did so, the officers saw Brown inside the car, pulling at something near the dashboard. Brown was walking away from the car as the officers approached, but when he saw that the officers were following him, Brown yelled an expletive and began to flee. Officer Ross chased Brown and, when he apprehended him, found a radio and face plate in Brown's hands and some controls from the dashboard in his coat pocket. Upon returning to the parked car, the officers saw a smashed passenger side window, a ripped out center console (where the radio would have been), a screwdriver on the ground, and broken glass around the car.

Brown testified to a completely different version of events. He was walking down Warren Street while listening to music through headphones connected to a "walkman" and carrying a second "walkman." As he was walking, he was struck in the head from behind. After the blow, he was dazed and semiconscious, and the next thing he could remember was being handcuffed with Officer Ross sitting astride his back. He was put in the police cruiser and taken to the station, where Officer Ross slammed his head into a wall several times. Brown testi-

fied that he possessed none of the items allegedly seized from him by the officers.

Officer Ross testified, on rebuttal, that he did not recall any "walkman" on Brown when he arrested him, and Officer Rogers —who had arrived on the scene after the arrest — testified that he did not recall seeing earphones or anything akin to them on Brown's head. On surrebuttal, Brown testified that two "walkmans" were returned to him after his arraignment.

Brown maintains on appeal that reversal of his convictions is required because the Commonwealth's evidence was insufficient to establish that he did not own the vandalized car. He contends also that he is entitled to a new trial because (a) his constitutional rights were violated by the Commonwealth's failure to provide him with a police inventory report showing that two "walkmans" had in fact been taken from him after his arrest; and (b) his trial counsel was ineffective insofar as he remedied a deficiency in the Commonwealth's case regarding ownership of the car, and in having failed to procure and use for impeachment purposes both the inventory report and a transcript of an earlier evidentiary hearing on the defendant's motion to suppress.

1. *Sufficiency of the evidence.* The Commonwealth introduced a Registry of Motor Vehicles application form showing that, as of February 18, 1999, the car vandalized on October 16, 1999, was owned by one Sheila McMillan. Notwithstanding Brown's contention to the contrary, we think that this was sufficient to permit a reasonable inference that the car and the property inside it belonged to someone other than the defendant on October 16, 1999.

2. *Failure to provide the police inventory report.* Brown contends that the Commonwealth withheld exculpatory and material evidence in violation of his Federal and State constitutional rights. See *Commonwealth* v. *Gallarelli*, 399 Mass. 17, 19 (1987), and cases cited; *Commonwealth* v. *Tucceri*, 412 Mass. 401 (1992). The undisclosed report, "Boston Police Department Prisoner Disposition Form"[1] indicates in the section denoted "Prisoner Personal Data" that Brown had no

---

[1]The report bears a date of July 20, 2000. Although the Commonwealth contends on appeal that this signifies that the report did not exist until well

money but that he did have "belt, wallet, glasses, 2 sets of walkman." This, Brown asserts, is exculpatory material insofar as it both corroborates his version of events and discredits the testimony of the police officers.

"To prevail on a claim that the prosecution failed to disclose exculpatory evidence, the defendant must first prove that the evidence was, in fact, exculpatory." *Commonwealth* v. *Healy*, 438 Mass. 672, 679 (2003). However, " '[e]xculpatory' in this context is not a narrow term connoting 'alibi or other complete proof of innocence,' *Commonwealth* v. *Ellison*, 376 Mass. 1, 22 n.9 (1978), but rather comprehends all evidence 'which tends to "negate the guilt of the accused" . . . or, stated affirmatively, "supporting the innocence of the defendant." ' *Commonwealth* v. *Pisa*, 372 Mass. 590, 595, cert. denied, 434 U.S. 869 (1977)." *Commonwealth* v. *St. Germain*, 381 Mass. 256, 261 n.6 (1980). The defendant must establish that he was prejudiced by the nondisclosure. Where a defendant has specifically requested the evidence that was not disclosed, "a standard of prejudice more favorable to the defendant is justified," *Commonwealth* v. *Tucceri*, 412 Mass. at 407, and he need only show that a "substantial basis exists for claiming prejudice from the nondisclosure." *Id.* at 412. Where a defendant did not specifically request the undisclosed evidence, however, but instead either made no request or only a general request for exculpatory evidence, the defendant, to prevail, must show that there is a "substantial risk that the jury would have reached a different conclusion if the evidence had been admitted." *Id.* at 413.

Brown claims that he made a specific request for the inventory report by virtue of (a) an allowed motion for the production of exculpatory evidence, and (b) a pretrial agreement requiring the Commonwealth to produce "police reports, notes, and F.I.O. in the custody or control of the Commonwealth." "[T]he due process clause does not require prosecutorial clairvoyance.

---

after the trial, the trial prosecutor made no such argument at the hearing on the defendant's motion for new trial. The trial prosecutor instead said that the inventory sheet was "located" after trial and was not among the police documents the prosecutor had before, during, or after trial. The report was apparently obtained by appellate defense counsel at the police station on July 20, 2000. We regard the Commonwealth's argument as to the nonexistence of the report prior to and during trial as having been waived.

Absent a request sufficiently specific to provide the Commonwealth with notice of the defendant[']s interest in a particular piece of evidence, the prosecution may legitimately be held responsible for disclosing only that evidence whose own character reveals its materiality." *Commonwealth* v. *Wilson*, 381 Mass. 90, 109 (1980).

Brown's allowed motion for the production of exculpatory evidence was not a specific request. There is nothing in the record to suggest that the prosecutor knew before Brown testified at trial that Brown's defense would implicate his possession of two "walkmans" at the time of the incident. Even if the prosecutor had the inventory report in hand, it was simply not of such character as to reveal its exculpatory potential.

The prosecutor did, however, agree to produce "police reports" and "notes" in the Commonwealth's custody or control; such pretrial agreements are binding on the parties and have the force of a court order. Mass.R.Crim.P. 11(a)(2), 378 Mass. 863 (1979); *Commonwealth* v. *Gallarelli*, 399 Mass. at 20. Even though the trial prosecutor apparently did not know of or have the inventory report in her possession before or during trial, it seems plain that the inventory report, prepared by the Boston police department in connection with the defendant's arrest on charges for which he later stood trial, was a document within the Commonwealth's custody or control. See *id.* at 20 n.4; *Commonwealth* v. *Tucceri, supra* at 407. The question remains whether the inventory report was within the scope of the "police reports" that Brown specifically requested and that the prosecutor agreed to provide. If so, the trial prosecutor had a duty to inquire concerning its existence. *Commonwealth* v. *Martin*, 427 Mass. 816, 823-824 (1998).

Because the inventory report was prepared by the police, it is in some sense a police report. But not all requests for police reports or records are specific requests for the evidence in question. See *Commonwealth* v. *Jackson*, 388 Mass. 98, 110 (1983) (request that Middlesex prosecutor provide "state, county or police department reports" not a specific request for Brockton police reports regarding investigations of another, apparently unrelated, crime). Contrast *Commonwealth* v. *Gallarelli*, *supra* at 20-22 (pretrial agreement to produce "police reports"

and "scientific reports" specific enough to require prosecutor, who did not have or know of laboratory report showing absence of blood on knife recovered from defendant, to disclose such report given the charge against the defendant, the scientific investigation conducted, and the evident materiality of such information).

The appellate record discloses little about the preparation or purpose of the inventory report, although it seems that neither of the two arresting officers who testified at trial played any part in connection with it. The inventory report does not appear to be investigatory in nature, and while it lists the charges against the defendant, it does not discuss the incident giving rise to the arrest, nor does it detail the defendant's involvement in the incident. Presumably, the purpose of such an inventory report is at least in part to catalogue items taken from a defendant when he is put in custody and thereby to ensure their later return to him. The inventory report, unlike prototypical police reports relating to crime investigations, has no self-evident bearing upon the defendant's involvement in the alleged criminal activity. Its arguable materiality comes to the fore only when coupled with knowledge that Brown's defense would implicate the two "walkmans" and that the police officers would testify that Brown did not have such items when arrested. The prosecutor apparently did not have such knowledge in advance of Brown's trial testimony, and in these circumstances, Brown's request for "police reports" was not specific enough to place the prosecutor on notice that the inventory report was being sought.

The inquiry then becomes whether Brown has shown a substantial risk that the jury would have reached a different conclusion if the evidence had been admitted at trial. Put another way, "would [the inventory report] have been a real factor in the jury's deliberations?" *Commonwealth* v. *Tucceri*, 412 Mass. at 413.

> "If the undisclosed evidence is cumulative, if it lacks credibility, or if, in an over-all assessment, it does not carry a measure of strength in support of the defendant, the failure to disclose that evidence does not warrant the

granting of a new trial. If, however, the undisclosed evidence is more credible than any other evidence on the same factual issue and bears directly on a crucial issue before the jury, such as the credibility of an important prosecution witness, that evidence would have been a real factor in the jury's deliberations, and its presence before the jury might have accomplished something material for the defense."

*Id.* at 414.

Brown contends that the inventory report corroborates his otherwise uncorroborated testimony and shows that the police officers were undeniably wrong in one aspect of their testimony. He argues that since the case turned on credibility — the jury had to choose between the police version and Brown's version of events — the inventory report of necessity would have been a real factor in the jury's deliberation. In this regard, Brown argues, the situation is akin to *Commonwealth* v. *Tucceri, supra,* where undisclosed police photographs depicted a mustachioed defendant following his arrest. The photographs would have been a real factor for the jury to consider since they had heard the victim and other witnesses, who identified the defendant as the assailant, describe the assailant as having been clean-shaven. A new trial was granted Tucceri since the photographs showed that the witnesses were "undeniably wrong in one aspect of their sworn identification testimony." *Id.* at 414.

We are not persuaded that the undisclosed inventory report is of similar import. To be sure, the inventory report would show that Brown was correct and the arresting officers were wrong about Brown's having had on him two "walkmans" that evening. Unlike *Tucceri,* however, where the undisclosed photographs bore directly on the core issue of identification, the "walkman" information does not have direct bearing on the crucial issue of whether Brown was the one who broke into the car and took items from it. Wearing two "walkmans" of unknown dimensions and committing the crimes with which Brown was charged are not mutually exclusive activities. See *Commonwealth* v. *Pisa,* 372 Mass. at 595-596. True, if the jury did not regard the police as merely having been mistaken about

a minor matter,[2] the "walkman" information may have enhanced Brown's credibility and diminished that of the police officers. Nonetheless, the jury would still have been left to consider the physical evidence of items recovered from the vandalized car and the fact that the same inventory report, prepared by someone other than the testifying officers, would have undercut if not contradicted Brown's testimony that he had been beaten by police.[3] We think it borders on the fanciful to maintain that, on the basis of the undisclosed report, the jury would have disbelieved the police officers' essential account, buttressed by physical evidence, in favor of Brown's version of events. Cf. *Commonwealth* v. *Bennett*, 43 Mass. App. Ct. 154 (1997). "[I]n an over-all assessment," the undisclosed report "does not carry a measure of strength in support of the defendant," *Commonwealth* v. *Tucceri, supra* at 414, and we discern no fault in the trial judge's determination that failure to disclose such evidence does not warrant a new trial.

3. *Ineffective assistance of counsel.* Brown contends that his lawyer provided ineffective assistance in three respects: in remedying a defect in the Commonwealth's case as to ownership of the car; in not specifically requesting the police inventory report; and in not procuring and using the transcript of the suppression hearing to impeach the police officers at trial.

Because we deem sufficient the Commonwealth's documentary evidence as to car ownership, any arguable misstep that defendant's trial counsel may have made in pursuing a line of questioning that underscored the fact that someone other than Brown owned the car is without consequence. As to counsel's failure to make a specific request for the inventory report, the short answer is that there is no indication in the record before us that defense counsel knew before trial that possession of the "walkmans" would be relevant to Brown's defense.

Finally, Brown complains that his trial counsel did not

---

[2]The police and Brown's versions are not necessarily inconsistent, in any event, because the "walkmans" of unknown size may have been, for example, in Brown's pocket and first noticed not by the arresting officers but by the booking officer.

[3]It read "visible injuries: none" and "suspect refused to [be] booked, printed, photo[graphed]."

procure or use at trial the transcript of a suppression hearing at which the defendant had been represented by different counsel. Trial counsel does not explain this regrettable lapse, but attests that it was not deliberate trial strategy on his part. Despite trial counsel's undeniable shortcoming in this regard, Brown has not shown how procurement and use of the transcript at trial would have provided something material to his defense. While Brown points to a number of discrepancies between police testimony at the hearing and at trial, we agree with the trial judge's assessment that the inconsistencies are at best minor.

*Judgments affirmed.*

*Denial of motion for
new trial affirmed.*