*1123
 
 OPINION
 

 Per Curiam:
 

 Appellant James David Roberts was convicted after jury trial of three counts of sale of a controlled substance and one count of trafficking a controlled substance. The state introduced evidence that Roberts sold cocaine on four occasions to an undercover police officer who had been introduced to Roberts through a confidential informant (Cl). Roberts claimed entrapment, alleging that the Cl pressured him, by fabricating an elaborate story, into selling cocaine when he had no predisposition to do so.
 

 Roberts moved for a pretrial order compelling the state to disclose the identity of the Cl who arranged the initial “buy,” and compelling the state to disclose all information in the possession of the state pertaining to the Cl, including specifically the “confidential informant file” (Cl file) allegedly compiled by and in the possession of the Las Vegas Metropolitan Police Department (LVMPD). Roberts claimed that the Cl file contained information regarding the Cl’s background, employment and communications that would support an entrapment claim.
 

 Although the state disclosed the identity of the Cl, one William Albert Noel, it refused to tender the Cl file. After the state refused to produce the Cl file, Roberts sought an order dismissing the grand jury indictment for failure to make discovery and Brady
 
 [1]
 
 disclosures. The district court judge denied the motion. The case proceeded to trial. Roberts requested and received entrapment instructions, but was convicted on the testimony of the officer and the CL Roberts now challenges the district court’s denial of his pretrial motion to dismiss.
 

 We conclude that once a defendant has articulated a specific basis for claiming materiality of particular evidence that it seeks, that the prosecutor bears the burden of avoiding disclosure by seeking
 
 in camera
 
 review. We therefore conclude that, in the instant case, the judge could not have ruled correctly on Roberts’
 
 Brady
 
 claim without having first reviewed the file, which he did not do. Thus, we remand this case to the district court for the limited purpose of conducting an
 
 in camera
 
 review of the Cl file to determine whether it contains evidence material to Roberts’ entrapment defense. We further direct the court to make specific findings of fact and conclusions of law with regard to the material in the Cl file, and we direct the clerk of the district court to certify those findings and conclusions to this court for ultimate
 
 *1124
 
 disposition of this appeal. We now address in more detail the factual background of this case and the legal standard for analyzing claimed
 
 Brady
 
 violations.
 

 On December 14, 1989, a grand jury indicted Roberts on three counts of sale of a controlled substance, cocaine, and one count of trafficking a controlled substance, cocaine. At the grand jury proceeding LVMPD Officer Roy Chandler testified that a confidential informant introduced Chandler to Roberts on July 10, 1989 at Teddy’s, a Las Vegas bar, for the purpose of buying cocaine. Chandler bought cocaine from Roberts on that occasion and on three additional occasions in July 1989. The Cl was present at only the first meeting.
 

 On April 29, 1991, Roberts moved for an order requiring the state to reveal the identity of the CI. Roberts supported his motion with an affidavit claiming that the CI had concocted an elaborate story to pressure Roberts into dealing cocaine to help the CI out of a dangerous situation. In his affidavit, Roberts swore to the following story: Roberts had moved back to Nevada from California prior to July 10, 1989 and was living with his mother. A person believed to be a police confidential informant solicited and begged Roberts to obtain cocaine for him. Roberts repeatedly refused to become involved with any illegal drug dealing. A few weeks later the CI again pleaded with Roberts to obtain cocaine because the CI had “misdealt” some drugs to a customer of his and the customer had threatened to kill the CI if the CI did not obtain a “replacement” supply of cocaine. The customer was allegedly affiliated with the mafia and the CI was afraid for his life.
 

 Roberts further swore that on July 10, 1989, he was persuaded by the CI to meet the customer at a Las Vegas bar on Teddy Drive. Roberts also swore that “all of [his] actions during the relevant period were done solely for the benefit of the [CI] and for the protection of [the Cl’s] life,” and that “[o]nly after [Roberts] became convinced by the [CI] that [the CI] could not apply to the police for protection and that [the CI] would surely be killed by his drug customer did [Roberts] seek to help the [CI].” Roberts swore that the CI could be cross-examined on these facts and aid his entrapment claim. Roberts also swore that he had made a “diligent effort to learn the identity of the informant and has been unable to locate him.” Roberts did not reveal that he had known for years the man who introduced him to Chandler at the bar, and that he knew his name and address, items later revealed in arguing Roberts’ motion before the district court judge.
 

 On May 29, 1991, the district court judge orally granted Roberts’ motion, ruling that “[t]he motion to require the state to reveal the identity of the [CI] is granted.” He then signed a
 
 *1125
 
 written order, which required the state to disclose the true identity of the Cl and to provide all relevant discovery regarding the Cl, including his last known address. On June 7, 1991, Chandler telephoned Roberts to disclose to him the name of the Cl, and he disclosed Noel’s name. Neither Chandler nor the district attorney’s office provided any additional or written information.
 

 On June 18, 1991, the district court judge heard arguments regarding the state’s failure to disclose additional information. The judge ruled orally at the close of arguments that, “Okay. The order is this, that you [Roberts] stay away from the [Cl] or [the Cl’s] wife, you personally, and the order also is that you [the state] give the name and current address that you have to [Roberts’ attorney].” After the judge’s oral ruling, there was discussion about Roberts intimidating the Cl, and Roberts’ attorney stated, “But, in any event, we would like to have the C.I. file, we would like to have a rap sheet, we would like to have any criminal involvement that he may have had on or about or surrounding the beginning of this incident.” The judge did not respond to the request, but asked, “How long will it take for you to be ready to go to trial?” The judge did not modify his oral order.
 

 The judge then signed a written order on July 2, 1991, prepared by Roberts’ counsel, directing “that the District Attorney shall forthwith identify the ‘confidential informant’ used by the police, and provide Defendant’s counsel with full discovery of all information in their files and in the Las Vegas Metropolitan Police Department’s files regarding the ‘confidential informant,’ including the file known as the ‘Cl’ file, and a copy of the ‘confidential informant’s’ ‘rap’ sheet.” The state produced Noel’s “rap sheet,” but refused to produce the Cl file.
 

 On September 12, 1991, Roberts filed a Motion to Dismiss the Indictment for Failure of the State to Make Discovery and
 
 Brady
 
 Disclosures. In its opposition, the state noted that the court had earlier ordered in its oral ruling only the disclosure of the name and address of the Cl, and it noted that it had provided Roberts with the Cl’s “scope” (apparently the “rap sheet”). The state argued that it should not be required to reveal a file containing information “for all cases that the informant has been involved with whether pending or not which are included in his [Cl] file.” Noel had worked for LVMPD for over nine years.
 

 On September 16, 1991, the district court judge heard arguments on Roberts’ Motion to Dismiss and denied it. The following colloquy occurred prior to the judge’s ruling:
 

 MR. GOWEN: I wrote [the prosecutor] a letter indicating what I wanted answered, what we are seeking, what we are trying to learn and I was greeted with a response as the C.I.
 
 *1126
 
 files are not available to the defendant under any circumstances.
 

 THE COURT: Yeah, that’s right. The motion to dismiss the indictment is denied ....
 

 The district judge did not review the file to determine if it contained information material to Roberts’ defense.
 

 Roberts was tried and Chandler and Noel testified for the state at the trial. Chandler testified that Noel informed on Roberts for money, and not to “work off” charges that were pending or threatened at the time Noel was informing. Chandler further testified as follows: Noel called Chandler on July 10, 1989 and told Chandler that Roberts could deal in ounces of cocaine. Noel introduced Chandler to Roberts later that day at “The Place,” a bar in Las Vegas on Teddy Drive. After the introduction, Roberts suggested that the men go outside to a car. The three went to Chandler’s car, and Roberts pulled a baggie out of his pocket; Chandler gave Roberts $350, and Roberts gave Chandler the baggie containing a quarter ounce of cocaine. Roberts was familiar with drug terminology and, in Chandler’s opinion, was experienced in the type of transaction the two were engaged in. Roberts suggested that he and Chandler deal with each other directly in the future instead of going through Noel, because Noel had added $50 to the price of the cocaine for himself, causing Chandler to pay $350 instead of $300 for the amount of cocaine he was buying. After the transaction, Chandler paid Noel $100 for introducing him to Roberts. Over the following week, and on three separate occasions, Chandler purchased three quarters of an ounce, an ounce and half an ounce of cocaine from Roberts for $750, $1,000 and $500, respectively. Roberts called Chandler on two of these occasions. Noel was not present at any of the later “buys,” and each of these transactions was surveilled by the LVMPD surveillance team. After these transactions, Roberts called Chandler and told him that he suspected him to be “a cop or a snitch.”
 

 Noel testified that he had known Roberts since 1979, when Roberts recruited Noel to help Roberts sell Quaaludes. Noel and Roberts lived together as roommates in 1983 or 1984. In 1985, Roberts helped Noel get a job at an adult nightclub, where Roberts was a security guard. Noel was later fired from this club after overcharging customers in credit card transactions. In 1989 Noel and Roberts came into contact again and Roberts asked Noel to help him sell a pound of cocaine. Noel agreed and called Chandler to inform. Noel also stated that Roberts had sex with Noel’s wife when Noel was in the hospital after a car accident, causing “bad blood.”
 

 
 *1127
 
 Roberts took the stand and related the story in his affidavit. Roberts was convicted of three counts of sale of a controlled substance and one count of trafficking a controlled substance. The judge sentenced Roberts to four concurrent twenty-year terms, plus a minimum $50,000 fine on the trafficking conviction. Roberts now appeals the district court judge’s denial of his motion to dismiss the indictment for failure of the state to make discovery and
 
 Brady
 
 disclosures.
 
 [2]
 

 Roberts sought dismissal of the indictment below, and seeks reversal of his conviction on appeal, for the failure of the state to make
 
 Brady
 
 disclosures upon a specific request. Neither Roberts, the lower court nor this court can know whether
 
 Brady
 
 material exists, because the state refused to produce the Cl file, it has never been reviewed and it was not made part of the record. Nonetheless, we set forth the law governing
 
 Brady
 
 disclosures, because, as we have indicated, we believe that remand to the district court is necessary to resolve this issue properly.
 

 In addition, although this court has had occasion to discuss a then-recent United States Supreme Court decision in this area of the law,
 
 [3]
 
 this court has not yet determined the standard of materiality for analyzing a
 
 Brady
 
 claim under recent conflicting state and federal decisions. Accordingly, we discuss the conflict in this area of the law and adopt a standard by which the district court judge, on remand, should evaluate Roberts’ claim.
 

 A prosecutor must disclose evidence favorable to an accused when that evidence is material either to guilt or to punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963) (suppression of evidence after specific request); United States v. Agurs, 427 U.S. 97, 110-112 (1975) (failure to disclose in the absence of a request); United States v. Bagley, 473 U.S. 667, 674 (1984) (nondisclosure in absence of request or after broad request).
 

 
 *1128
 
 The Supreme Court of the United States first discussed, in
 
 Agurs,
 
 427 U.S. at 103-04, 112, the three situations that it envisioned under
 
 Brady.
 
 There it stated:
 

 [Brady]
 
 arguably applies in three quite different situations. Each involves the discovery, after trial, of information . . . known to the prosecution but unknown to the defense.
 

 [If] the undisclosed evidence demonstrates that the prosecution’s case includes perjured testimony and that the prosecution knew, or should have known, of the perjury . . . [the conviction] must be set aside if there is any
 
 reasonable likelihood that the false testimony could have affected the judgment of the jury.
 

 The second situation, illustrated by the
 
 Brady
 
 case itself, is characterized by a pretrial request for specific evidence. . . . A fair analysis of the holding in
 
 Brady
 
 indicates that implicit in the requirement of materiality is a concern that the suppressed evidence
 
 might have affected the outcome of the trial.
 

 The proper standard of materiality [in cases where no request or a general request has been made] must reflect our overriding concern with the justice of the finding of guilt. ... It necessarily follows that if the omitted evidence
 
 creates a reasonable doubt which did not otherwise exist,
 
 constitutional error has been committed.
 

 (Emphasis added.) Lower federal courts and state courts interpreted
 
 Agurs
 
 to adopt a “might have affected the outcome of trial” standard of materiality in “specific request” cases and these courts analyzed such cases under that standard.
 
 See
 
 2 LaFave & Israel,
 
 Criminal Law
 
 § 19.5 at 539 (noting that courts “generally looked to this language in assessing materiality ... in request-cases” and citing federal and state cases).
 

 The Supreme Court later unified its approach and held that, in all cases except the prosecutor’s knowing use of perjured testimony, evidence is “material” if there exists a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.
 
 Bagley,
 
 473 U.S. at 682, 685; Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1986). A “reasonable probability” is a probability sufficient to undermine confidence in the outcome.
 
 Bagley,
 
 473 U.S. at 678, 685;
 
 Ritchie,
 
 480 U.S. at 57. The Court found this “[single] test for materiality sufficiently flexible to cover the ‘no request,’ ‘general request,’ and ‘specific request’ cases of prosecutorial failure to
 
 *1129
 
 disclose evidence favorable to the accused[.]”
 
 Bagley,
 
 473 U.S. at 682.
 

 Many state courts have acknowledged that
 
 Bagley
 
 modified or abrogated
 
 Agurs
 
 in the federal system.
 
 See, e.g.,
 
 State v. Deitrich, 567 So. 2d 623, 631 (La. Ct. App. 1990); Commonwealth v. Gallarelli, 502 N.E.2d 516, 519 n.5 (Mass. 1987); State v. Marshall, 586 A.2d 85, 192 (N.J. 1991); People v. Vilardi, 556 N.Y.S.2d 518, 523 (1990); State v. Garrity, 469 N.W.2d 219, 221 (Wis. Ct. App. 1991); Engberg v. Meyer, 820 P.2d 70, 77 (Wyo. 1991).
 
 [4]
 
 However, several of these courts, on state law grounds, have refused to adopt the single
 
 Bagley
 
 test for materiality in cases in which the accused has made a specific request, and the prosecutor has failed to disclose arguably favorable evidence.
 
 See
 
 Commonwealth v. Gallarelli, 502 N.E.2d 516, 519 n.5 (Mass. 1987); State v. Marshall, 586 A.2d 85, 192 (N.J. 1991); People v. Vilardi, 555 N.E.2d 915 (N.Y. 1990).
 
 [5]
 
 These courts have based their failure to adopt the “federal” test, in specific request cases, on the special quality of the prosecutor’s action when he or she is on notice of the type of material requested by the accused but nevertheless fails to disclose evidence that arguably falls within that request.
 
 [6]
 

 In
 
 Marshall,
 
 the New Jersey Supreme Court expressly rejected
 
 Bagley
 
 in the specific request situation, and retained the “might have affected the outcome” test as it had been interpreted and applied in New Jersey courts. That court recognized that the
 

 “might have affected the outcome of the trial” test is not translatable into the
 
 mere possibility
 
 that the undisclosed information
 
 might
 
 have helped the defense. . . . There must be a
 
 real possibility
 
 that the evidence would have affected the result. In essence, the “might have affected the outcome” test requires the application of a harmless error [beyond a reasonable doubt] analysis.
 

 
 *1130
 
 586 A.2d at 192 (emphasis added) (citations omitted). The court expressly retained this “real possibility” standard, which it attributed to
 
 Agurs,
 
 instead of adopting
 
 Bagley. Id.
 

 In
 
 Vilardi,
 
 the New York Court of Appeals expressly rejected the
 
 Bagley
 
 test, finding it inadequate to address the concerns presented by prosecutorial nondisclosure in the face of a specific request. 555 N.E.2d at 920 (“declin[ing] to abandon . . . accepted principles in order to conform to the lesser protections of
 
 Bagley V)
 
 Judge Kaye wrote for the court that
 

 suppression, or even negligent failure to disclose, is more serious in the face of a specific request in its potential to undermine the fairness of the trial, and ought to be given more weight than as simply one of a number of discretionary factors to be considered by a reviewing court.
 

 Id.
 
 The court stated that it had “long emphasized that our view of due process in this area is, in large measure, predicated both upon ‘elemental fairness’ to the defendant, and upon concern that the prosecutor’s office discharge its ethical and professional obligations.”
 
 Id.
 
 at 919 (citations omitted). Instead of adopting the
 
 Bagley
 
 standard, the
 
 Vilardi
 
 court approved of and adopted the lower New York court’s test: that nondisclosed evidence is material if there exists a
 
 reasonable possibility
 
 that [failure to disclose the material]
 
 contributed to
 
 the defendant’s conviction.’” 555 N.E.2d at 916, 920 (emphasis added).
 

 The
 
 Vilardi
 
 court recognized (as the Supreme Court had also recognized in
 
 Bagley)
 
 that nondisclosure after a specific request reasonably implies to the defendant that the requested evidence simply does not exist, and that the defendant may then change or abandon trial strategy in reliance on the prosecutor’s nondisclosure.
 
 Id.
 
 at 918;
 
 see also Bagley, 473 U.S. at
 
 682-83.
 

 In
 
 Bagley,
 
 Justice Blackmun acknowledged this danger, but concluded that a separate standard was not necessary because under the single standard
 

 the reviewing court may consider directly any adverse effect that the prosecutor’s failure to respond might have had on the preparation or presentation of the defendant’s case. The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor’s incomplete response.
 

 473 U.S. at 682. Justice Stevens, the author of
 
 Agurs,
 
 bitterly disputed this proposition, noting that “[bjecause th[e] constitu
 
 *1131
 
 tional duty to disclose [evidence when no request has been made] is
 
 different
 
 from the duty described in
 
 Brady,
 
 it is not surprising that we developed a different standard of materiality [for no-request cases] in the
 
 Agurs
 
 context.” 473 U.S. at 711 (Stevens, J. dissenting) (emphasis in original). He later stated that
 

 [t]he Court’s analysis reduces the significance of deliberate prosecutorial suppression of potentially exculpatory evidence to that merely of one of [sic] numerous factors that “may” be considered by a reviewing court. This is not faithful to our statement in
 
 Agurs
 
 that “[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.”
 

 Id.
 
 at 714 (citation omitted). Apparently, Justice Stevens would have analyzed nondisclosure after a specific request under the same test used to analyze the harm done by a prosecutor in knowingly presenting perjured testimony. He stated, “Bagley’s conviction therefore must be set aside if . . . there is ‘any reasonable likelihood’ that it could have affected the judgment of the trier of fact.”
 
 Id.
 
 at 713.
 

 The Ninth Circuit, reconsidering
 
 Bagley
 
 on remand under the new
 
 Bagley
 
 standard, found that nondisclosure of evidence that would have been used to impeach the government’s key witnesses in an effective manner undermined confidence in the outcome of Bagley’s trial, and was therefore material under the new standard.
 
 See
 
 Bagley v. Lumpkin, 798 F.2d 1297 (9th Cir. 1986).
 

 We note that Roberts claims that the Cl file contains certain information that would tend to establish that Noel was working not only for periodic compensation, but also for leniency in criminal prosecutions. In addition, he alleges that the Cl file will contain information on Noel’s background and specifically the communications between Noel and Chandler, or other LVMPD investigators, that will coroborrate much of Roberts’ sworn statement and provide information that would allow effective impeachment of Noel. If the district court judge concludes, after reviewing the Cl file on remand, that the file contains any such information, and that such information undermines his confidence in the outcome of trial, it would certainly require disclosure of the file under
 
 Bagley.
 

 However, we also must determine whether Nevada will follow
 
 Bagley
 
 or will instead construe the due process clause in the Nevada Constitution,
 
 see
 
 Nev. Const, art. 1, § 8, to require a standard more favorable to the accused in the “specific request” situation. Here, Roberts made a specific
 
 Brady
 
 request well in advance of trial. The district court judge held three hearings to determine what information, if any, should be disclosed, and he
 
 *1132
 
 signed a formal court order requiring disclosure of the Cl file. After all of this, the prosecution failed to produce the file or to submit it to the court for
 
 in camera
 
 review.
 

 We conclude that the decisions that preserved, on state law grounds, separate materiality tests in specific request situations are well-reasoned and take into account, in the standard itself, the special nature of nondisclosure after a specific request. We therefore adopt for Nevada a test similar to those of New York and New Jersey, patterned after the language in
 
 Agurs,
 
 that reflects the “concern that the suppressed evidence
 
 might have affected the outcome of the
 
 trial.”
 
 Agurs,
 
 427 U.S. at 103-04, 112. Like the New Jersey court, we construe this language not to have been a holding or firm command, but instead a reflection of the concern underlying the
 
 Brady
 
 holding that there exist more than “the
 
 mere possibility
 
 that the undisclosed information
 
 might
 
 have helped the defense. . . . There must be a
 
 real possibility
 
 that the evidence would have affected the result.”
 
 Marshall,
 
 586 A.2d at 192 (emphasis added) (citations omitted);
 
 see also Bagley,
 
 473 U.S. at 667 & n.12 (noting that the
 
 Agurs
 
 “Court did not define the standard of materiality applicable in [the specific request situation], but suggested that the standard might be more lenient to the defense than in the situation in which the defense makes no request or only a general request”). We conclude that the proper standard for analyzing whether a
 
 Brady
 
 violation has occurred after a specific request is whether there exists a reasonable possibility that the claimed evidence would have affected the judgment of the trier of fact, and thus the outcome of the trial.
 

 In the instant case, Roberts claimed that Noel’s Cl file contained information on Noel’s employment as an informer and on Noel’s communications to Chandler that would bear directly on Noel’s actions and motivations. Roberts sought the information to effectively cross-examine and impeach Noel. He also maintained that the information would factually support his entrapment defense.
 
 [7]
 
 It is well settled that evidence that would enable effec
 
 *1133
 
 tive cross-examination and impeachment may be material and that nondisclosure of such evidence may deprive an accused of a fair trial.
 
 Bagley,
 
 473 U.S. at 676-78 (noting, however, that failure to disclose such evidence does not implicate the Sixth Amendment Confrontation Clause);
 
 see also
 
 Giglio v. United States, 405 U.S. 150, 154 (1972) (“When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within
 
 [Brady].”)
 
 (citation omitted). Other state courts have allowed discovery of background information on CIs and communications that CIs have made to police departments when the accused seeks the information for impeachment value and to substantiate a defense of entrapment.
 
 See
 
 People v. Perez, 568 N.E.2d 250, 257 (Ill. App. Ct. 1991); People v. Raess, 496 N.E.2d 1186, 1189, 1191 (Ill. App. Ct. 1986). In the instant case, it cannot be said that the district court judge ruled Roberts’ entrapment claim without merit, for the judge instructed the jury on entrapment, indicating that Roberts presented evidence at trial sufficient to require an instruction on this theory. Accordingly, relevant impeachment evidence in Noel’s Cl file, as it relates to the alleged offense and Roberts’ claim of entrapment, would have been admissible at trial.
 

 Roberts supported his request for the file with an affidavit claiming that Noel recruited Roberts over a period of weeks. Had the relevant portions, if any, of the Cl file corroborated this, Roberts may have been able to substantiate his claim of entrapment. At trial, Chandler testified to events that occurred after Noel made a phone call to Chandler on the date of the initial cocaine “buy.” Roberts’ claim of entrapment concerned events that occurred prior to that phone call. Thus, information indicating that Noel communicated with Chandler regarding Roberts over several weeks preceding the “buy,” and not just on the date of the first buy, would have been relevant to Roberts’ claim that Noel pressured him on several occasions.
 

 In addition, Chandler and Noel both testified that Noel worked for money only, and not for leniency in criminal prosecutions. However, Noel was arrested for possession of a controlled substance on January 4, 1990. Although this arrest occurred six months after the “tip,” it was still an offense that was charged before trial. Roberts claimed that Noel was not being prosecuted for that charge because of his value as a testifying informant. Indeed, two years later Noel’s “rap sheet” did not show a conviction stemming from that arrest. Chandler only testified that Noel was not working off charges during the time that Noel was working for LVMPD as an informant. The file may have con
 
 *1134
 
 firmed or disproved Roberts’ claim that Noel was not subject to prosecution for providing favorable trial testimony at a later time. Accordingly, the Cl file may contain impeachment evidence favorable and material to Roberts’ defense in this regard.
 

 In Bagley, the Court noted that the purpose of
 
 Brady
 
 was not to “displace the adversary system . . . but to ensure that a miscarriage of justice does not occur.”
 
 Id.
 
 at 675. It further noted that “the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial. ...”
 
 Id.
 
 (footnote omitted). We conclude that if evidence substantiating Roberts’ entrapment claim and allowing effective impeachment of Noel is contained in the Cl file, and if Roberts was denied access to that information, then he was deprived of a fair opportunity to present his only legitimate defense, and that he was therefore not afforded a fair trial. We therefore remand this case to the district judge for the limited purpose of reviewing the Cl file. Only then can he rule whether matters in the file are favorable and material to Roberts’ defense under the standard we have articulated in this opinion.
 

 The state claims that Roberts may not challenge on appeal the court’s failure to conduct an
 
 in camera
 
 review of the Cl file, because Roberts failed to request that particular procedure below. For this proposition, it cites Hubbard v. State, 618 P.2d 553, 555 (Wyo. 1980). In the instant case, however, Roberts is not challenging only the district court’s failure to conduct an
 
 in camera
 
 review, although he is arguing that such a procedure is appropriate. Roberts’ broader claim is that the state committed a constitutional violation when it failed to disclose favorable and material impeachment evidence after a specific request for such evidence. The district court judge could only have ruled properly on this claim if he had viewed the file. Furthermore, because we conclude that it is the prosecutor’s affirmative duty to present the information for
 
 in camera
 
 review once particular evidence has been identified and a specific materiality claim articulated, it should not matter whether the defendant formally requests the
 
 in camera
 
 review. As the Supreme Court has stated, once an accused states a substantial basis for claiming materiality, “it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge.”
 
 Agurs, 427
 
 U.S. at 106. Accordingly, we conclude that once a defendant has articulated a substantial basis for claiming
 
 *1135
 
 materiality in seeking particular evidence, the prosecutor bears the burden of avoiding discovery by seeking
 
 in camera
 
 review.
 

 We have considered the state’s arguments that Nevada’s statutory criminal discovery provisions prohibit the disclosure of the Cl file. We decline to discuss the state’s claims, however, because we conclude that the statutory provisions, even if they had the effect urged by the state, must yield to the constitutional
 
 Brady
 
 rule as articulated herein.
 

 Based on the foregoing, we remand the instant case to the district court for the limited purpose of conducting an
 
 in camera
 
 review of the “Cl file” — whether known by that or any other name — compiled by or in the possession of the LVMPD. In particular, we direct the district court judge to make specific findings of fact and conclusions of law with regard to the information contained in the file and whether it is material within the meaning of the standard adopted in this case. We also direct the clerk of the district court to certify those findings of fact and conclusions of law to this court for our final resolution of the issue presented by Roberts.
 

 [1]
 

 Brady v. Maryland, 373 U.S. 83 (1963) (requiring prosecutor to disclose to an accused favorable evidence material to either guilt or punishment).
 

 [2]
 

 Roberts has not, in his brief before this court, addressed the claimed “discovery” error allegedly made by the district court judge. In this case, the judge twice signed orders that differed substantially from his oral rulings. However, at argument on the motion to dismiss the indictment, the judge was apprised of his prior rulings and, to the extent they were discovery orders, modified them. Roberts has not presented authority, statutory or otherwise, for analyzing a claimed “discovery” error. Therefore, we address only the constitutional
 
 Brady
 
 claim.
 

 [3]
 

 See
 
 State Bar of Nevada v. Claiborne, 104 Nev. 115, 180-81, 756 P.2d 464, 506-07 (1988) (discussing federal judge’s comments that federal court failed to apply then-applicable federal standard enunciated in United States v. Bagley, 473 U.S. 667 (1985)).
 

 [4]
 

 See also,
 
 among others, State v. Trumble, 748 P.2d 826, 828 (Idaho Ct. App. 1987); State v. Dery, 594 A.2d 149, 153 (N.H. 1991); People v. Ramos, 558 N.Y.S.2d 784, 786 (Sup. Ct. 1990); O’Rarden v. State, 777 S.W.2d 455, 458 n.3 (Tex. Ct. App. 1989).
 

 [5]
 

 See also
 
 State v. Kaiser, 486 N.W.2d 384, 386 (Minn. 1992) (rejecting federal analysis altogether); State v. Brisson, 619 A.2d 1099, 1102 (R.I. 1993) (rejecting
 
 BagleylBrady
 
 outcome-determinative analysis and instead applying a “sliding-scale analysis based on the blameworthiness of the prosecution”).
 

 [6]
 

 In
 
 Gallarelli
 
 the Massachusetts Supreme Court rejected
 
 Bagley
 
 altogether, even with regard to what is an arguably more favorable standard (to the defendant) that
 
 Bagley
 
 articulated in the “no request” and “general request” situations.
 
 See
 
 502 N.E.2d at 519 n.5 (as a “matter of State law” deciding “instead to adhere to what [we view as] the more prudent safeguards of defendants’ rights now found in [state precedent]”).
 

 [7]
 

 Entrapment as a matter of law exists where the evidence shows that (1) the state furnished an opportunity for criminal conduct (2) to a person without the requisite intent to commit the crime.
 
 See
 
 Shrader v. State, 101 Nev. 499, 501, 706 P.2d 834, 835 (1985). In Nevada, a person’s predisposition to commit a crime must be evident before he is targeted, and the authorities must possess “reasonable cause to believe the individual is predisposed to commit the crime.”
 
 Id.
 
 at 501-02. Moreover, once a defendant puts forth “evidence of governmental instigation,” the burden of providing predisposition shifts to the state.
 
 See id.
 
 at 504-05.