*915
 
 OPINION
 

 Per Curiam:
 

 The primary claims of error address a federal agency’s refusal to disclose allegedly exculpatory evidence and the district court’s determination to admit taped conversations between the appellant and an unavailable confidential informant. For the reasons discussed below, we affirm the appellant’s conviction.
 

 FACTS
 

 Appellant, Timothy Wade (“Wade”), became the target of a federal investigation for drug trafficking in northern Nevada.
 
 [1]
 
 On or about January 18, 1994, the federal Drug Enforcement Agency (“DEA”) placed a confidential informant, Clay Hodges (“Hodges”), on Wade’s case. The DEA used Hodges to arrange drug deals and meetings between Wade and DEA agents, specifically, Agents Maria Cartagena (“Agent Cartagena”) and Ronald Davis (“Agent Davis”). Thereafter, Hodges arranged for Agent Cartagena to purchase two pounds of methamphetamine from Wade, Nancy Lyn Woods (“Woods”) and Heriberto Islas (“Islas”), for $21,000.
 

 Per DEA instructions, Hodges taped several telephone and face-to-face conversations with Wade between January 18, 1994, and February 2, 1994. The record indicates that, over Wade’s objection, five tapes containing numerous conversations between Hodges and Wade were admitted at trial and played for the jury during the State’s case-in-chief.
 
 [2]
 
 In violation of his instructions, Hodges removed the wire for approximately six minutes during one of the face-to-face conversations with Wade, resulting in six minutes of silence on the tape. The jury was apprised of this gap. Other taped conversations presented at trial were between Wade and Agent Cartagena.
 

 On February 2, 1994, Agent Cartagena, equipped with a wire and accompanied by additional undercover officers, agreed to
 
 *916
 
 meet Wade at a Reno hotel to consummate the drug transaction. Wade, Woods, and Islas were all present at the hotel cafe and assisted in the exchange of money for methamphetamine. After the exchange, Agent Cartagena and back-up law enforcement officers arrested Wade, Islas, and Woods for conspiracy to sell a controlled substance and for trafficking. For unknown reasons, the United States Attorney’s Office decided not to prosecute this case. The matter was then taken over by the Washoe County District Attorney’s Office.
 

 Among over ninety-four items that Wade requested during the discovery process, he specifically requested the State to disclose the confidential informant file (“Cl file”) on Hodges and all recorded telephone conversations. Wade also requested that the State produce Islas and Hodges as material witnesses.
 
 [3]
 

 The district court held a pre-trial hearing to determine whether the tapes were admissible and whether the State committed discovery violations by refusing to disclose or produce exculpatory evidence consisting of the Cl file on Hodges, complete transcripts of the taped conversations and/or the tapes themselves, and witnesses material to Wade’s defense. During this hearing, the State maintained that it had an “open file” policy; that is, it had disclosed all discoverable information to Wade. Upon further explanation, the State informed the district court that the DEA, without referring to any specific documents, refused to disclose all the information it possessed on Hodges. Agent Cartagena also testified that certain confidential information on Hodges remained in his Cl file, despite Hodges’ “deactivation” as a DEA informant.
 
 [4]
 
 The State corroborated this representation by stating that some of the information was confidential and, therefore, nondiscoverable.
 

 Failing in its efforts to locate Hodges prior to trial, the State apprised the district court and the defense that, even if Hodges could not be located, it did not intend to utilize Hodges’ dialogue on the tapes in lieu of his testimony. Rather, it maintained that Hodges’ taped statements would be only used for the limited purpose of providing a context for Wade’s conversations.
 
 [5]
 

 At trial, Wade was convicted of conspiracy to sell a controlled substance and sale of twenty-eight or more grams of metham-phetamines. At oral argument before this court, counsel for Wade
 
 *917
 
 primarily assigned error to the district court’s admission of the tapes and the State’s failure to disclose potentially exculpatory evidence.
 
 [6]
 

 DISCUSSION
 

 Admissibility of the taped conversations between Wade and Hodges
 

 The determination of whether to admit evidence is within the sound discretion of the district court, and that determination will not be disturbed unless manifestly wrong. Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985).
 

 In admitting the taped conversations, the district court relied on United States v. Tangeman, 30 F.3d 950 (8th Cir. 1994).
 
 See also
 
 United States v. Inadi, 475 U.S. 387, 398 n.11 (1986); United States v. McKneely, 69 F.3d 1067 (10th Cir. 1995). Wade objected to the admission of these tapes on three grounds: (1) the State’s failure to establish a chain of custody; (2) the fact that Hodges’ unavailability prevented Hodges from testifying that he consented to being taped; and (3) hearsay.
 
 [7]
 

 In
 
 Tangeman,
 
 an informant’s statements on a tape recorded conversation with a defendant were determined to be nonhearsay.
 
 Tangeman,
 
 30 F.3d at 952. The court analyzed the case based upon a defendant’s right to confront witnesses pursuant to the Sixth Amendment because the informant there had also become unavailable.
 
 Id.
 
 In holding that the tapes were nonhearsay, the court stated:
 

 We agree with the district court . . . that [the informant’s] statements were offered to provide context for Tangeman’s
 
 *918
 
 admissions and not to prove the truth of the matters asserted therein. The court also cautioned the jury that voices in the recordings other than Tangeman’s were to be considered only to place Tangeman’s statements in context.
 

 Id.
 
 at 952.
 

 We agree with the rationale in
 
 Tangeman
 
 and, therefore, adopt that federal court’s approach when such circumstances present themselves. Accordingly, we conclude that the State did not introduce Hodges’ statements on the tapes to prove the truth of the matter asserted, but only for the limited purpose of providing a context for Wade’s statements.
 
 See
 
 NRS 51.035. The record reflects that the State argued this precise rationale before the district court at the time Wade objected to admission of the tapes below. Because we adopt the approach taken in
 
 Tangeman,
 
 we further conclude that the tapes are nonhearsay and, therefore, their admission into evidence did not violate Wade’s rights of confrontation.
 

 Failure to disclose the Cl fde
 

 Although we have previously addressed the State’s duty to provide the defendant with all potentially exculpatory evidence in its control or possession, we have yet to consider the novel situation where an independent federal agency refuses to disclose what it regards as confidential information contained in an internal Cl file.
 
 See
 
 Roberts v. State, 110 Nev. 1121, 881 P.2d 1 (1994) (discussing Brady v. Maryland, 373 U.S. 83 (1963) (requiring prosecutor to disclose to an accused favorable evidence material to either guilt or punishment));
 
 see also
 
 U.S. v. Spires, 3 F.3d 1234 (9th Cir. 1993).
 

 In
 
 Roberts,
 
 the defendant made a specific
 
 Brady
 
 request for a Cl file on the informant well in advance of trial.
 
 Roberts,
 
 110 Nev. at 1131, 881 P.2d at 7. The district court held three hearings to determine what information, if any, should be disclosed.
 
 Id.
 
 The district court ultimately ordered disclosure of the Cl file on a Las Vegas Metropolitan Police Department’s informant, to which the State had access.
 
 Id.
 
 at 1132, 881 P.2d at 3. The prosecution failed to produce the file or to submit it to the court for in camera review following the defendant’s specific materiality claim.
 
 Id.
 
 at 1132, 881 P.2d at 9. In reversing Roberts’ conviction, this court stated:
 

 [I]t cannot be said that the district court judge ruled Roberts’ entrapment claim without merit, for the judge instructed the
 
 *919
 
 jury on entrapment, indicating that Roberts presented evidence at trial sufficient to require an instruction on this theory. Accordingly, relevant impeachment evidence in Noel’s [the informant’s] Cl file, as it relates to the alleged offense and Roberts’ claim of entrapment, would have been admissible at trial.
 

 Id.
 
 at 1133, 881 P.2d at 8.
 

 In this case, the DEA refused to disclose the Cl file on Hodges to the State. Given the prosecution’s disclosure of the entirety of the DEA materials disclosed to it, and the testimony of DEA agents assigned to the case that certain confidential information was nondiscoverable, the record strongly suggests that not even the State was privy to the information contained in the Cl file. ’
 

 We conclude that the case at bar is readily distinguishable from
 
 Roberts.
 
 In
 
 Roberts,
 
 the working relationship between the state and local police compelled the conclusion that they were a single entity for the purposes of providing discovery in criminal prosecutions. Further, the prosecution actively possessed the Cl file in
 
 Roberts.
 
 We emphasize that the State may not circumvent the discovery process by claiming that a local police department, an agent of the State, refuses to disclose such documents. Therefore, when this situation presents itself, the
 
 Brady
 
 rule applies.
 
 See
 
 United States v. Bagley, 473 U.S. 667 (1985).
 

 At oral argument, Wade’s counsel conceded that he did not believe that the State had any knowledge of the DEA’s Cl file on Hodges. Wade’s counsel further represented that the only reason he knew that a Cl file on Hodges must exist was due to his own experience. Relying on Kyles v. Whitley, 514 U.S. 419 (1995), Wade maintains that the failures to disclose made it impossible for him to establish an entrapment defense without the Cl file on Hodges. Claiming that he had no alternative method to obtain the file, Wade urges reversal of his conviction. We disagree.
 

 In
 
 Kyles,
 
 the United States Supreme Court held that (1) in determining whether evidence not disclosed by the State was “material,” and, therefore, in violation of Brady v. Maryland, 373 U.S. 83 (1963), the cumulative effect of all suppressed evidence favorable to the defendant is considered, rather than considering each item of evidence individually; and (2) favorable evidence that the State failed to disclose to the defendant would have made a different result “reasonably probable,” and thus, nondisclosure of such evidence amounted to a
 
 Brady
 
 violation.
 
 Kyles,
 
 514 U.S. at 419.
 

 While we recognize that Wade intended to present an entrapment defense, we do not agree with his contention that he had no alternative way of obtaining the Cl file. We hasten to point out
 
 *920
 
 that the record does not reflect that Wade, despite suspecting that a Cl file on Hodges existed but had not been disclosed, at any time requested an in camera hearing per
 
 Roberts.
 
 Further, contrary to Wade’s counsel’s representation to this court, pursuant to 28 C.F.R. § 16.26 (1997),
 
 [8]
 
 Wade could have attempted to subpoena the Cl file directly from the DEA, given that the State was not in a position of authority to order the DEA to disclose the evidence.
 

 Further, we are persuaded by Ferguson v. State, 487 S.E.2d 467, 468 (Ga. 1997), in which a defendant on trial for trafficking claimed that the State violated
 
 Brady
 
 by failing to disclose that its witness had a prior criminal history and by failing to reveal an arrangement between a witness and the FBI. The court held that:
 

 In order to show that the State violated Brady by failing to reveal a deal with one of its witnesses, a defendant must show that the State possessed evidence of the deal; that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; that the State suppressed evidence of the deal; and that, had the evidence of the deal been disclosed to the defendant, there existed a reasonable probability that the result at trial would have been different.
 

 Id.
 
 (citing Burgeson v. State, 475 S.E.2d 580, 638 (Ga. 1996)).
 

 After applying these standards, the court in
 
 Ferguson
 
 held that the defendant failed to carry his burden of showing a
 
 Brady
 
 violation.
 
 Id.
 
 The court stated that the state prosecutor disclosed all the information to the defense that it possessed regarding the federal arrangement. The court further relied on an earlier Georgia case in which the court stated,
 
 “‘Brady
 
 requires information to be revealed only when it is “possessed by the prosecutor or any
 
 *921
 
 one over whom the prosecutor has authority.’’’
 
 Id.
 
 at 469 (quoting Zant v. Moon, 440 S.E.2d 657 (Ga. 1994)).
 

 We conclude that the instant case presents a similar situation, in that the State did not possess the Cl file. Further, the State was not in a position of authority to order the federal DEA, an entity that did not act as an agent of the State prosecution, to cooperate. We agree with the court’s rationale in
 
 Ferguson
 
 and, therefore, conclude that Wade also fails to carry his burden of showing a
 
 Brady
 
 violation. Further, because Wade could have employed alternative methods to obtain the information contained in the Cl file on Hodges, we conclude that no
 
 Brady
 
 violation occurred.
 

 Having concluded that Wade’s remaining allegations lack merit and do not warrant discussion, we hereby affirm Wade’s judgment of conviction.
 

 [1]
 

 The record is unclear as to when Wade first became suspected of drug trafficking.
 

 [2]
 

 The record further indicates that the DEA transcribed nearly all of the conversations, face-to-face and by telephone, except a final conversation between Wade and Agent Cartagena the day before Wade’s arrest.
 

 [3]
 

 After the arrest, Islas became an informant for the DEA, but disappeared sometime prior to trial. Wade does not contend on appeal that Islas’ unavailability denied him a fair trial. However, he does argue that Hodges’ unavailability caused him to suffer undue prejudice.
 

 [4]
 

 At trial, Agent Cartagena explained that the DEA determined that it no longer had any use for Hodges’ services and, therefore, ceased using him as an informant. She further stated that under normal circumstances, when this occurs, the agency loses contact with the former DEA informant.
 

 [5]
 

 Wade’s prior counsel met with Hodges and did, in fact, interview him prior to his disappearance.
 

 [6]
 

 Wade did not address an issue at oral argument that he discusses at length in his opening brief. The issue involves a failed cooperation agreement with the DEA that would have enabled him to receive a recommendation from the DEA for a lesser sentence in exchange for information pertaining to drug trafficking in northern Nevada. Wade argues that the State breached the cooperation agreement. The district court found that Wade had failed to provide substantial assistance to the DEA and, therefore, was not entitled to receive a recommendation for a lesser sentence. Because sufficient evidence exists to support the district court’s ruling, we conclude that this argument lacks merit. Therefore, we choose to focus on the two issues upon which Wade focused at oral argument.
 

 [7]
 

 Having reviewed the record, we conclude that the district court correctly found that the State established a proper chain of custody for the tapes and that Hodges consented to being taped when he agreed to wear a wire and record his conversations with Wade. Accordingly, we conclude that Wade’s first two grounds lack merit. We, therefore, only address in detail Wade’s hearsay argument, upon which he focused at oral argument.
 

 [8]
 

 28 C.F.R. § 16.26 states in part:
 

 Considerations in determining whether production or disclosure should be made pursuant to a demand.
 

 (a) In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider:
 

 (1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and
 

 (2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.
 

 (b) Among the demands in response to which disclosure will not be made by any Department official are those demands with respect to which any of the following factors exist:
 

 (3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,
 

 (4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection.