An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

KYLE ADRIAN WILSON,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 65272

**FILED**

SEP 2 8 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK



## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction for home invasion pursuant to a jury verdict. Eighth Judicial District Court, Clark County; Valerie Adair, Judge. Appellant Kyle Wilson contends that the district court erred in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by denying his motion to order the State to disclose criminal history reports for two of the State's witnesses. Wilson additionally contends the district court erred by refusing his proffered jury instruction defining "reside." We conclude that Wilson failed to demonstrate how the criminal history reports would have been favorable or material to him under *Brady*. Additionally, Wilson was not entitled to an inaccurate and misleading jury instruction. Therefore, the district court did not err and we affirm.

### *FACTS*

In the summer of 2011, John Nelson purchased a new home and moved into it, but maintained ownership over his previous residence. Nelson then allowed his handyman, James Romine, to occupy his previous residence under the agreement that Romine perform work and look after the place in exchange.

15-29324

Early December 2, 2011, Romine left home to go to work. When Romine returned, he discovered the door ajar to a closet containing recording equipment for the home's security cameras. The recording equipment had been displaced from the closet to a kitchen chair. Romine also discovered a kitchen window open and off its track. Additionally, there were pliers wedged into the sliding glass door.

Crime scene analysts lifted fingerprints from the kitchen window, which were identified as belonging to Wilson. Police also reviewed the security camera footage, which showed an intruder wearing a Toronto Blue Jays hat. Later, Wilson revealed to police that he was the person in the video wearing the Toronto Blue Jays hat. Thus, Wilson admitted to entering the home, but offered that he did so to use the bathroom because it looked abandoned.

On March 6, 2012, the State charged Wilson with home invasion. Wilson filed a discovery motion, requesting SCOPE (Shared Computer Operations for Protection and Enforcement) and NCIC (National Crime Information Center) reports for Romine and Nelson. The district court denied Wilson's motion, concluding that it could not order the State to disclose the requested reports.

During trial, Wilson proposed a jury instruction that would define the term "reside" as used in the home invasion statute. *See* NRS 205.067(5)(b). Wilson's proposed instruction provided:

> The term "reside," as used in these instructions, means a person's actual residence. That is, the place where an individual is legally domiciled and maintains a permanent habitation. In order to be legally domiciled in a particular place, there must be a concurrence of fact and intention: the person must make the place his actual abode, place of physical presence, or

SUPREME COURT
OF
NEVADA

(O) 1947A

2

abiding place, and he must evince intent to permanently remain in and/or always return to that place. A mere coming for a special purpose and for a limited time does not establish legal domicile.

The district court declined to give the instruction, concluding that the instruction inaccurately applied domicile to the home invasion context. At the conclusion of Wilson's jury trial, he was convicted of home invasion. He appeals.

## DISCUSSION

*Brady Violation*

Wilson contends that the State was required to disclose the requested criminal history reports because the State must disclose material information under *Brady*. "Determining whether the state adequately disclosed information under *Brady* . . . requires consideration of both factual circumstances and legal issues; thus, this court reviews *de novo* the district court's decision." *Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000).

*Brady* requires prosecutors to disclose evidence favorable to the defense when the evidence is material to guilt or punishment. *Id.* "[T]here are three components to a *Brady* violation: the evidence at issue is favorable to the accused; the evidence was withheld by the State, either intentionally or inadvertently; and prejudice ensued, i.e., the evidence was material." *Id.* at 67, 993 P.2d at 37 (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). The evidence is favorable to the accused and requires disclosure "if it provides grounds for the defense to attack the reliability, thoroughness, and good faith of the police investigation, to impeach the credibility of the State's witnesses, or to bolster the defense case against prosecutorial attacks." *Id.* Wilson maintains that the criminal history

reports would have been favorable for the purpose of impeaching the State's witnesses.

Here, Wilson has no basis for inferring that Nelson or Romine even have a criminal history. *See Strickler,* 527 U.S. at 286 ("Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review."). Moreover, even if we presumed that the State's witnesses have extensive criminal histories, Wilson's theory of defense is not buttressed by impeachment of the State's witnesses. Wilson contended in the district court and now on appeal that he did not violate the home invasion statute because Romine did not technically "reside" in the home, as Romine did not have the intent to remain there. Impeaching the State's witnesses with criminal history information does not tend to prove whether, under the law, a victim of home invasion must have the intent to remain in the home. Nor would it prove whether, in fact, the victim had that intent. Thus, Wilson has failed to demonstrate that the evidence would have been favorable.

Wilson correctly asserts, however, that under the second *Brady* factor, the reports were withheld by the State. The State insists the reports were not in its possession or control because they were held by the police department. In *Roberts v. State,* we determined the State was in possession of a criminal informant file when the file was in local law enforcement's possession. *See* 110 Nev. 1121, 1125, 1132, 881 P.2d 1, 3, 7-8 (1994) *overruled on other grounds by Foster v. State,* 116 Nev. 1088, 13 P.3d 61 (2000). The working relationship between the state and local police compelled the determination that they were a single entity for purposes of producing discovery in criminal prosecutions. *Wade v. State,*

SUPREME COURT
OF
NEVADA

(O) 1947A

4

114 Nev. 914, 919, 966 P.2d 160, 163 (interpreting *Roberts*). We have emphasized that "the State may not circumvent the discovery process by claiming that a local police department, an agent of the State, refuses to disclose such documents." *Id.* In this case, as in *Roberts*, the State was in possession of the reports because local law enforcement was in possession.

Furthermore, the State's argument that it was not permitted to disclose the criminal history records pursuant to Judicial Administration, 28 C.F.R. § 20.21, lacks merit. 28 C.F.R. § 20.21(c)(3) provides: "States and local governments will determine the purposes for which dissemination of criminal history record information is authorized by State law, executive order, local ordinance, court rule, decision or order." In turn, NRS 179A.110 explicitly authorizes the district court to order disclosure of criminal history reports. Nonetheless, Wilson's argument that the district court was *required* to order disclosure also fails. NRS 179A.110 does not mandate disclosure, but permits it. *See* NRS 179A.110 (limiting criminal record use to purpose for which it was requested, except in the case of a court order). Here, neither the State nor the police were under court order to disclose.

Under the final *Brady* factor, the proper standard for assessing materiality of omitted evidence depends on whether the defense made a specific request for the evidence. *Mazzan*, 116 Nev. at 66, 993 P.2d at 36. If the defense did not request the evidence or made a general request, the omitted "evidence is material if there is a reasonable *probability* that the result would have been different if the evidence had been disclosed." *Id.* (emphasis added). However, if the defense made a specific request, the omitted evidence is material if there is a reasonable *possibility* that the result would have been different had the evidence been

disclosed. *Id.* Wilson made a specific request for SCOPE and/or NCIC reports on September 7, 2012. Accordingly, the evidence was material if there was a reasonable *possibility* that the result would have been different if disclosed. We conclude, in light of the overwhelming evidence of Wilson's guilt, any history of criminality that may have been revealed by the requested reports would have had little or no bearing on the defense's theory. Thus, there is no reasonable possibility that a decision other than guilty would have been reached if disclosed.

Wilson contends, at minimum, that the district court should have ordered *in camera* review to determine whether Nelson or Romine had any convictions relevant for impeachment purposes. "[O]nce a defendant has articulated a specific basis for claiming materiality of particular evidence that it seeks. . . . the prosecutor bears the burden of avoiding disclosure by seeking *in camera* review." *Roberts*, 110 Nev. at 1123, 881 P.2d at 2. Wilson has yet to articulate a specific basis for claiming materiality. He does not allege with any particularity any potential criminal offense that, if revealed through disclosure of the reports, may be useful for impeachment or may lend credence to his theory of defense. Therefore, Wilson was not entitled to *in camera* review.

Because Wilson is unable to show, under *Brady*, that the withheld evidence was favorable to him or that it prejudiced him, the district court did not err when it, without *in camera* review, denied his request for NCIC and SCOPE reports on the State's witnesses.

*Jury Instruction*

Wilson asserts that the district court erred when it refused to give his proposed jury instruction providing that a victim only "resides" in a home for purposes of determining when a home invasion has been

committed, when he or she intends to remain there. Wilson further argues that Romine's lack of this requisite level of intent precludes Wilson's conviction for home invasion. The State contends Wilson's proffered jury instruction was improper for use in the context of home invasion, and if applied, would lead to absurd results. We agree.

"This court reviews a district court's decision to issue or not to issue a particular jury instruction for an abuse of discretion." *Ouanbengboune v. State*, 125 Nev. 763, 774, 220 P.3d 1122, 1129 (2009). However, we review whether a jury instruction is an accurate statement of law de novo. *Funderburk v. State*, 125 Nev. 260, 263, 212 P.3d 337, 339 (2009). We have "consistently held that the defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be." *Crawford v. State*, 121 Nev. 744, 751, 121 P.3d 582, 586 (2005) (internal quotation omitted). The defense is not, however, entitled to jury "instructions that are misleading, inaccurate, or duplicitous." *Id.* at 754, 121 P.3d at 589.

Wilson was charged under NRS 205.067(1), which provides:

> A person who, by day or night, forcibly enters an inhabited dwelling without permission of the owner, resident or lawful occupant, whether or not a person is present at the time of the entry, is guilty of invasion of the home.

An inhabited dwelling is then defined by NRS 205.067(5)(b):

> "Inhabited dwelling" means any structure, building, house, room, apartment, tenement, tent, conveyance, vessel, boat, vehicle, house trailer, travel trailer, motor home or railroad car in which the owner or other lawful occupant *resides*.

(Emphasis added).

The term resides, as used in NRS 205.067(1), does not require intent to remain. "Residence," the noun form of "reside," means "[t]he act or fact of living in a given place for *some time.*" *Black's Law Dictionary*, 1502 (10th ed. 2014) (emphasis added). In addition, "residence" is distinguished from "legal residence" or "domicile," which requires bodily presence, in addition to intent to remain. *Id; Williams v. Clark County Dist. Attorney*, 118 Nev. 473, 482, 50 P.3d 536, 542 (2002) (noting that actual residence is a place of living and does not require intent to remain, in contrast from legal residence or domicile). There is no other indication within NRS 205.067 that the Legislature intended the victim of home invasion to possess intent to remain in the home. Thus, Wilson's jury instruction, configured based on "legal residence" or "domicile" and applicable in the civil context, *see* NRS 10.155, clearly presents an inaccurate and misleading statement of law as it pertains to home invasion. As such, Wilson was not entitled to the instruction. Based on the foregoing, we

ORDER the judgment of conviction AFFIRMED.



_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

cc:   Hon. Valerie Adair, District Judge
Nguyen & Lay
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk